[Civil No. 2886. Filed June 30, 1930.]

[289 Pac. 512.]

CONRAD B. MOLINA, Appellant, v. R. C. BEN-
NETT, as Trustee in Bankruptcy of GUS T.
MOLINA, Appellee.

Mr. Henry C. Kelly, Mr. Glenn Copple and Mr. L. M. Laney, for Appellant.

Mr. William H. Westover and Mr. A. J. Eddy, for Appellee.

LOCKWOOD, C. J.—This is an action brought by R. C. Bennett, hereinafter called plaintiff, as trustee in bankruptcy of Gus T. Molina, hereinafter called the bankrupt, against Conrad B. Molina, hereinafter called defendant, and certain other parties who did not appeal from the judgment of the lower court, to set aside a transfer by the bankrupt to defendant of forty-nine shares of stock in the J. M. Molina Investment Company, a corporation, hereinafter called the company.

The case was tried before a jury which returned certain answers to interrogatories submitted to it, which answers if approved by the court would have required a judgment in favor of defendant. The court, however, disregarded them and found all the facts in issue in favor of plaintiff, and rendered judgment on its findings rather than on the interrogatories submitted to the jury; and after the usual motion for new trial was overruled, this appeal was taken.

There are certain facts in the case which are undisputed, and others concerning which there is a sharp conflict of evidence, and even more of the inferences to be drawn from the evidence. It is, of course, the rule of this court—so well established that no citations in support thereof are necessary—that we will presume the trial court found every issue of fact necessary to support its judgment and that if there is evidence in the record which will reasonably support such findings, they are conclusive with us. We shall therefore discuss first the evidence and its

sufficiency to sustain the judgment under the rule just set forth, and then consider the legal propositions involved in defendant's assignments of error.

J. M. Molina, the father of both bankrupt and defendant, had for many years been a resident of the Yuma Valley, and had acquired considerable property. During the month of March, 1924, he concluded to incorporate the company and to transfer all his property to it. This was done; and at a meeting held in San Diego, California, with only members of the Molina family present, one thousand shares of stock were originally issued: Five hundred to Mrs. J. M. Molina, as being her share of the community property which constituted the assets of the corporation; four hundred and ninety-eight to J. M. Molina; and one share each to bankrupt and to defendant to qualify them as directors in the company. On the same day, according to the dates appearing in the stock book, J. M. Molina surrendered and canceled his certificate for four hundred and ninety-eight shares, and had issued in lieu thereof fifty shares to himself, fifty shares each to seven of his children, and forty-nine shares each to defendant and to the bankrupt, the effect being that J. M. Molina and his nine children were then the holders of fifty shares each of the company's stock, and Julia F. Molina, his wife, held the remaining five hundred shares. The certificate of stock originally issued in the name of Gus T. Molina, and numbered 6, shows on its back a transfer to Conrad B. Molina, dated the same day the stock was originally issued to the bankrupt, and a cancellation of the certificate; and the stock book of the company shows that on the same date there was issued to Conrad B. Molina, in lieu of the certificate so assigned and canceled, certificate No. 15, for forty-nine shares. On the face of the stock book it therefore appeared that after these various trans-

actions upon March 29, 1924, Gus T. Molina was the owner of but one share of the stock of the company, Conrad B. Molina owned ninety-nine shares, and the balance was variously distributed between the mother, the father, and the remaining brothers and sisters.

Gus T. Molina, between the years 1917 and 1924, had become indebted to various persons for different sums, many of which debts had been reduced to judgment, and on March 29, 1924, was admittedly insolvent, if the stock originally issued to him be not included among his assets. About the seventeenth day of July, 1927, in a certain action being tried in the superior court of Yuma county, bankrupt testified he was the owner of one share of stock in the company. On the 21st of July, one of his judgment creditors garnished the company, and defendant, answering for the company, stated that the bankrupt did not own any stock of the corporation. The stock book shows that the bankrupt on the 20th of July had transferred his one share of stock to his brother Ataulfo, an attorney in San Diego. In the fall of 1927 the judgment creditor above referred to started proceedings supplemental to execution, and cited Gus T. Molina for examination under the statute. Before hearing was had in such supplemental proceeding, the latter filed his petition in the federal district court in voluntary bankruptcy. Various hearings were had on the petition, and defendant and the bankrupt were examined at length. Following such examination, an order was made by the federal court that this action be commenced in the superior court of Yuma county to set aside the conveyance, hereinbefore described, of the forty-nine shares from Gus T. to Conrad B. Molina, as having been made without consideration and in fraud of creditors. Defendant set up by demurrer and answer, first, laches in bringing the

action; second, the statute of limitations; and, third, that there was a valuable consideration for the transfer of the stock. The consideration was claimed to be the result of the following circumstances, as shown by the testimony on behalf of defendant: In the year 1917, defendant was engaged in farming in the Yuma Valley. He had certain livestock and agricultural implements worth some four or five thousand dollars, and a large amount of partially grown cotton growing on leased ground. In August of that year he was drafted into the United States Army, but was in Yuma from time to time until December. Upon leaving Yuma in August he turned his partially matured cotton crop and farm implements over to bankrupt under an agreement that the latter was to get twenty per cent of the net proceeds of the crop, and to turn the eighty per cent balance over to their father to be deposited by him in the bank for defendant. In pursuance of this agreement, bankrupt took charge of the crop, harvested and disposed of it, together with the team and farming equipment, and collected the price thereof. Conrad came back to Yuma in the spring of 1919 and discovered that none of the proceeds aforesaid had been turned over to his father in accordance with the agreement, nor did he ever receive any of them. Nothing was done by Conrad to secure payment of this indebtedness due him from his brother, estimated by him at some twenty to thirty thousand dollars, until the occasion in San Diego when the stock of the company was issued as aforesaid. The testimony on behalf of defendant was to the effect that when his father was about to sign the forty-nine share certificate for bankrupt, defendant called his father's attention to the account which the former owed him. Gus did not dispute the account, and said he would pay it some day. The father signed Gus' certificate, together

with the others, but did not deliver it immediately, Conrad and Gus being engaged in a discussion of the matter. The father then told Gus that unless he would agree to turn the certificate immediately over to Conrad in payment of the admitted indebtedness, he would destroy the certificate made in favor of Gus and issue one direct to Conrad. The parties then adjourned to the office of Ataulfo Molina, and after further discussion and insistence by J. M. Molina that the certificate must be assigned to Conrad, Gus finally indorsed it, and a new certificate was then and there made out and delivered to Conrad.

It is the contention of defendant: First, that a full consideration was paid by him to Gus T. Molina for the transfer of the stock, being a release of the debt above stated; and, second, that even were there no valuable consideration, that the stock was in reality a gift from his father, J. M. Molina, to him—in either case Gus T. Molina, being merely a naked trustee through whom the title was to pass. The sole witnesses to these alleged transactions of March 29th were members of the Molina family, but all those who testified in regard to that transaction agreed that the basis of the transfer from Gus T. Molina to Conrad B. Molina was the insistence by J. M. Molina that the indebtedness owed by the one to the other, as a result of the transactions occurring while defendant was in the army, be paid by such transfer. These transactions, in substance, as we have stated above, were that the bankrupt had agreed to liquidate defendant's assets while he was in the army and turn the same, less twenty per cent commission, over to defendant's father to be credited to the account of defendant, and that the bankrupt liquidated the assets but embezzled all of them.

In order to meet the issue of consideration, plaintiff endeavored to prove by various records and the

testimony of many witnesses that all of these assets, so far as they existed, were properly accounted for by Gus, and that Conrad received either them or the benefits thereof. The testimony is voluminous and involves many records and exhibits. We are of the opinion, however, that not only there was sufficient evidence to sustain a finding by the trial judge that Gus T. Molina did account for the assets of Conrad Molina properly, so that no indebtedness existed from him to defendant as a result of the transaction, but that it decidedly preponderated to that effect. Such being the case, following the rule of law above stated, it must be assumed as an ultimate fact in the case that no such indebtedness as that testified to by the Molinas, and upon which, according to their story, the transfer from the bankrupt to defendant was based, ever existed. If this be the case, the only reasonable inference is that the story of the transaction of March 29th was false, and that the certificate No. 6 for forty-nine shares of stock issued to Gus T. Molina and by him assigned to defendant was not issued in trust for the purpose claimed by defendant. The only other reasonable theory is that it was a direct gift to the bankrupt for the same purpose and in the same manner as the gifts admittedly made to the other children. It is not disputed that at the time of the issuance of such stock the bankrupt was insolvent. The natural supposition, then, would be that the transfer was made for the purpose of concealing his assets. If the stock for one moment was actually his as owner and not as trustee, even though as the result of a gift, any transfer made thereafter and not for an adequate and valuable consideration would be void as to creditors. We think the trial court was justified in making the findings we must presume it did make which resulted in the conclu-

sion of law that the transfer was void as against the creditors of the bankrupt.

There remain two matters for consideration. First, had the statute of limitations run against this suit? The reasonable conclusion to be drawn from the allegations of the complaint is that the fraudulent transfer took place March 29, 1924, and the suit to set it aside was not brought until the winter of 1928–29. The time within which a suit of this nature could be brought is governed by subdivision 3, paragraph 711, Revised Statutes of Arizona of 1913:

"There shall be commenced and prosecuted within three years after the cause of action shall have accrued, and not afterward, all actions or suits in courts of the following description: . . .
. "(3) Actions for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

This provision has been construed by this court in the case of *Guerin* v. *American Smelting etc. Co.*, 28 Ariz. 160, 236 Pac. 684, 687, wherein the court states as follows:

"The doctrine deducible from the decisions is that the aggrieved party need not have actual notice of the fraudulent act to start the running of the statute, but, if the facts and circumstances were such as in the exercise of reasonable care and diligence he should have discovered the fraud, he is deemed to have notice. Where ignorance of the fraud is due to negligence or indifference or inattention, its discovery will be deemed to date from the time when one exercising reasonable diligence would have discovered it."

The question, then is: When could the creditors under the facts and circumstances of this case have discovered the fraud if they had exercised reasonable care and diligence? Authorities are of little value on this point, as in no two cases are the facts alike. It

is claimed by defendant that the alleged fraud could easily have been learned shortly after the transfer of the stock in 1924. We are of the opinion that, taking into consideration all the circumstances, particularly the facts that this was a family corporation, and that there is no evidence that the issuance of the forty-nine share certificate to the bankrupt was ever known by any of the creditors until shortly before the fall of 1927, we cannot affirmatively say that reasonable diligence was not used by the latter. It appears that as soon as the ownership by the bankrupt of any of the stock was actually known, which was in 1927, the creditors moved promptly. The same reasoning applies to the issue of laches, and the trial court properly disposed of the demurrers and pleas raising these questions. We need not discuss any of the other matters presented by the briefs.

Finding no reversible error in the record, the judgment of the superior court of Yuma county is affirmed.

McALISTER and ROSS, JJ., concur.