[Civil No. 4706.   Filed June 11, 1945.]

[159 Pac. (2d) 617.]

JACK FLATH, Executor of the Estate of Perry A. Yeast, Also Known as P. A. Yeast, Deceased, Appellant, v. ED NEAL, Petitioner for Probate, Appellee.

Messrs. Bryne and McDaniel, for Appellant.

Mr. Carl D. Hammond, for Appellee.

LaPRADE, J.—This is an appeal by Jack Flath, one of the executors of the estate of Perry A. Yeast, deceased, from an order and judgment of the Superior Court of Mohave County, State of Arizona, made and rendered on November 5, 1943, directing the admission of a copy of the will of said decedent in ancillary probate.

Appellee filed his petition for letters, claiming to be a creditor of the non-resident decedent, and alleged that decedent left estate in Mohave County, Arizona, consisting of a real estate mortgage on a small piece of patented land and a grazing lease on state land and lands belonging to the Santa Fe Pacific Railroad Company and range rights under the Taylor Grazing Act.

Appellant objected to the admission of the foreign will to probate on the grounds that decedent left no estate of any kind in Mohave County, Arizona.

The only issue raised by the pleadings and submitted for the court's determination was whether or not any estate was, in fact, left by decedent in Mohave County, Arizona.

There was and is no dispute as to the facts. The same were stipulated to by the parties. Briefly, decedent, a non-resident of the State of Arizona, owned

prior to April 28, 1942, a ranch situated in Mohave County, Arizona, consisting of a small tract of patented land, state land leases, Santa Fe Pacific Railroad Company leases, grazing rights under the Taylor Grazing Act, 43 U. S. C. A. §§ 315–315n, 1171, and personal property consisting of several thousand head of cattle, a few horses, and ranch machinery and equipment.

On the date mentioned, this property was sold by decedent to one J. M. Smith, a resident of Graham County, Arizona, and decedent's several conveyances were made and delivered to the purchaser within a few days thereafter. The sale price was the sum of $116,000, payable $6,000 in cash, the assumption of an indebtedness and mortgage, and two promissory notes of $15,000 each, secured by junior mortgages on the real and personal property sold.

The sale agreement between deceased and Smith also contained the following provision:

"Second party (Smith) further agrees that he will run for first party (Yeast) upon said ranch, without cost to first party, two hundred head of cattle per year for three years, it being understood that the first party now has on said ranch no cattle other than those hereby sold to second party, but that first party shall have the privilege of buying and putting on said ranch the said two hundred head of cattle per year for the said three years."

On June 20, 1942, the decedent assigned the monies owing him under the Smith contract of April 27, 1942, and note, together with the security for their payment, to his grandson, Perry A. Yeast, Jr., in consideration of natural love and affection and the sum of one dollar lawful money of Canada.

On July 10, 1942, at Medicine Hat, Alberta, Canada, the decedent Perry A. Yeast died, being at the time of his death a resident of and domiciled in the Province of Alberta, Dominion of Canada. The principal administration of his estate was had in the District Court

of the District of Southern Alberta, Judicial District of Medicine Hat, Province of Alberta, Canada, and ancillary proceedings were also had in the Superior Court of the County of Los Angeles, State of California, with appellant qualifying as executor in the California ancillary probate proceedings.

At the time of the death of deceased, the Smith notes which had been assigned to the grandson were in the State of California and came into the possession of the California executor, who listed them as assets of the deceased in California, and by his petition for probate alleged that they were part of the estate in California. On December 4, 1943, appellant filed in the Mohave County court a motion to open the order and judgment admitting the will to ancillary probate in Mohave County in order that the court might receive in evidence the pleadings and records of proceedings in a certain cause of action in the Superior Court of the State of California in and for the County of Los Angeles, and specifically a judgment of this last-named court wherein Perry A. Yeast, Jr., the grandson, had secured judgment against the California executor, adjudging him to be the owner of the Smith agreement and the two promissory notes, and directing the California executor to deliver possession of the same. This motion was denied.

By appropriate assignment of error, appellant has challenged the order of the court admitting the will in ancillary probate in Mohave County.

The jurisdiction of a superior court of the State of Arizona to admit a foreign will to probate is entirely dependent upon estate of decedent being left by him in the county in which the foreign will is offered for probate. Section 38–214, Arizona Code Annotated 1939. The pertinent part of this section reads as follows:

"Every will duly proved and allowed in any other state or in any foreign country, may be admitted to

probate in the superior court of any county in which the testator *left any estate.* . . . '' (Emphasis supplied.)

The order and judgment of the Superior Court of Mohave County in admitting the will to ancillary probate recites that

''said decedent left estate within Mohave County, Arizona, consisting of interests in real and personal property, and subject to administration in this court, and also left estate the legal *situs* of which is in Graham County, State of Arizona. . . . ''

██ The petition of appellee Neal for ancillary letters predicated his right for letters upon an allegation that he was a creditor of the deceased. The petition contained no allegation or charge that the assignment of the agreement, notes, and mortgages by the deceased to his grandson was fraudulent as to creditors within any of the provisions of Section 58-402, Arizona Code Annotated 1939, relating to conveyances by insolvents and other persons. It is suggested in the briefs that the Superior Court of Mohave County treated the assignment from decedent to the grandson as being void or voidable and in violation of the provisions of the section above referred to. The assignment instrument is valid on its face and there is nothing in the record in this case indicating fraud of any kind or character. It is true that it does show by its terms that it was a voluntary conveyance, but a voluntary conveyance is just as valid as any other, in the absence of a charge and proof of fraud. The only presumption the court should have indulged in was that the instrument was in all respects regular and valid.

It is the contention of the appellee that if there is property in any county either belonging to the estate or in the hands of an heir or fraudulent transferee held under a title that might be void or voidable, then the court of such county has jurisdiction to administer and prosecute such a claim for the benefit of creditors,

heirs, or distributees. As reason and authority for such contention, appellee cites us to *In re Daughaday's Estate*, 168 Cal. 63, 141 Pac. 929; *In re Acken's Estate*, 144 Iowa 519, 123 N. W. 187, 192, Ann. Cas. 1912A, 1166; and 21 Am. Jur., Executors and Administrators, Section 41, which last-named section reads as follows:

"Sec. 41. *In Jurisdiction Other Than Domicile of Decedent.*—The right to letters of administration in a state other than the domicile of the decedent does not, in all cases, depend upon the existence of tangible assets requiring administration. A mere claim or right to enforce some claim, whether legal or equitable, irrespective of its probable merits, is sufficient foundation for the issuing of letters of administration. Hence, it has been held that a right to letters of administration may be sufficiently predicated on a right of action, a pending action, or even a judgment recovered in favor of the decedent in his lifetime."

In the Daughaday case, the California court held that an administration of an estate in probate could be had of an equitable claim or demand as property of the estate without the validity of the claim or demand being first established in an equitable action.

The facts in the Acken case disclose that a daughter, under a power of attorney given to her by her mother, made a bill of sale of all her mother's personal property to herself. Upon the mother's death, her son asked for the issuance to him of letters of administration, contending that his mother had left personal property subject to administration. The daughter answered by asserting that the mother left no property for administration. This raised the determinative issue as to whether or not the bill of sale referred to was valid. The court said:

"That an attorney in fact has no implied authority to deal with and make conveyances to himself is too clear for argument, and there is no showing of express authority."

It sustained the jurisdiction of the probate court because, *prima facie,* there was property left by the decedent mother for administration in view of the presumptive voidness of the bill of sale.

In the case at bar there was nothing before the court to indicate that the conveyance by the deceased to his grandson was made to hinder, delay, or defraud creditors, or that such conveyance had left him insolvent. Had such a showing been made, we believe that the court would have been justified in granting letters testamentary and appointing an executor to establish in a plenary suit the legality of the assignment. Such a procedure is not only contemplated, it is authorized by statute. Our Section 38-1107, Arizona Code Annotated 1939, provides that

"When there is a deficiency of assets in the hands of an executor or administrator, and the decedent, in his lifetime, has conveyed or transferred any property, or any rights or interests therein with intent to defraud his creditors, or to avoid any right, debt or duty of any person, or has conveyed or transferred such property that by law the conveyance or transfer is void as against creditors, the executor or administrator shall commence and prosecute an action for the recovery of the same for the benefit of the creditors, and recover property which has been so conveyed or transferred, whatever may have been the manner of such conveyance or transfer. The executor or administrator is not bound to bring such action unless the creditors pay such part of the costs and expenses of the suit, or give such surety to the executor or administrator therefor, as the court on application by the creditors may direct. The property recovered shall be subject to the payment of the debts of the decedent as other property in the hands of the executor or administrator."

We might here and now on the status of the pleadings reverse this case, and would be justified in so doing. To thus summarily dismiss this appeal might mislead counsel and result in the filing of a new or

amended petition seeking leave to probate this estate and secure the issuance of letters, which we believe would be of no avail as we shall point out.

██ As above indicated, no administration can be had unless there are assets subject to the jurisdiction of the court. It is the established law in this jurisdiction that the administrator in possession of a negotiable promissory note, secured by mortgage, belonging to his decedent, is entitled to payment thereof, and only such administrator or his transferee is so entitled. *Smith* v. *Normart,* 51 Ariz. 134, 75 Pac. (2d) 38, 114 A. L. R. 1456. In this last-named case, the deceased died in the State of Illinois, at which place he owned and held as payee a negotiable promissory note secured by a realty mortgage on property in Santa Cruz County, Arizona. The maker-debtor also lived in Santa Cruz County. His will was admitted to probate in the Superior Court of Santa Cruz County. Ancillary administration was had in Illinois. The note and mortgage were in the possession of the Illinois administrator. In this case, it was not only determined that the administrator in possession of a negotiable instrument belonging to his decedent was entitled to payment thereof, but that a negotiable note secured by a mortgage is personal property, the *situs* of which for administration purposes is where the note is at the time of the owner's death. In the case at bar these notes were in California at date of death of the testator, and came into the possession of the California executor. Had the California court in the action of the grandson against the California executor found that the assignment was absolutely void and that the notes and mortgage belonged to the estate of the deceased in California, under our holding in the Smith v. Normart case, these notes and mortgage would not have been assets subject to administration in the Mohave County Court.

We will now make reference to the provision in the original sales agreement between the deceased and Smith wherein the deceased retained "the privilege of buying and putting on said ranch the said two hundred head of cattle per year for the said three years" from the date of the instrument, which was April 28, 1942. This privilege to graze cattle on the lands of Smith in Mohave County has now terminated by expiration of time. Thus it is not necessary for us to determine whether this privilege was a license in real property, personal and non-assignable, or a right in the nature of an easement.

In the Smith v. Normart case, *supra,* this court considered the three prevailing lines of authority as to what is the *situs* of a promissory note for purposes of administration. It considered (1) the domiciliary doctrine—the rule that a chose of action in the nature of a promissory note is an asset for administration at the domicile of the deceased payee, (2) the doctrine that the *situs* is at the residence of the debtor, in order that the dominant policy of the forum might assert itself for the protection of local creditors, and (3) the so-called mercantile doctrine—the rule that negotiable notes partake of the character of personal chattels on account of their transferability, and that the proper *situs* for such assets for administration purposes is where the asset is at the time of the owner's death. See Beale's Conflict of Laws, vol. 3, secs. 471.1–471.8.

A study of the problem through the reported cases reveals a bewildering indecision and contrariety of results. The propriety of the dominant policy of the forum of protecting local creditors is fairly less than compelling. That this rule has its adherents is demonstrated by the opinion of Mr. Justice Gray of the Supreme Court of the United States in the case *Wyman, Treasurer,* v. *Halstead, Adm'r,* 109 U. S. 654, 3 Sup. Ct. 417, 418, 27 L. Ed. 1068.

"The general rule of law is well settled that for the purpose of founding administration, all simple contract debts are assets at the domicile of the debtor; and that the locality of such a debt for this purpose is not affected by a bill of exchange or promissory note having been given for it, because the bill or note does not alter the nature of the debt, but is merely evidence of it, and therefore the debt is assets where the debtor lives, without regard to the place where the instrument is found or payable." (Citing cases.)

■■ The cases of *McCully* v. *Cooper*, 114 Cal. 258, 46 Pac. 82, 35 L. R. A. 492, 55 Am. St. Rep. 66, and *Richards* v. *Riverside Iron Works*, 56 W. Va. 510, 49 S. E. 437, give expression to the thought that there should be a close affinity between *situs* of assets and the jurisdiction whose laws are required to reduce them to possession. A close examination of the reasoning of the cases and authorities cited in the Smith v. Normart case fairly discloses that this court established the rule of that case upon authority and not without good reason. Upon a subject matter that is so highly debatable, it is absolutely necessary that a position be taken and adhered to until it is made to appear by changing conditions that it is illogical, impracticable, or inequitable. The desirable goal in the administration of the law is certainty. As Sir Edward Coke observed: "The knowne certaintie of the lawe is the safetie of all." We adhere to the exposition of the law as set forth in the Smith v. Normart case. Accordingly, and for the reasons herein above enunciated, this case is reversed, with directions to vacate the order admitting the foreign will to probate.

STANFORD, C. J., and MORGAN, J., concur.