799 P.2d 30

Natalie NUNEZ, et al.; and Southern Arizona Legal Aid, Inc., Plaintiffs/Appellees/Cross–Appellants,

v.

INTERSTATE CORPORATE SYSTEMS, INC., and Richard H. Ashburn, et al., Defendants/Appellants/Cross–Appellees.

No. 2 CA–CV 89–0188.

Court of Appeals of Arizona, Division 2, Department A.

Oct. 2, 1990.

Stompoly & Stroud by L. Anthony Fines, Tucson, for plaintiffs, appellees, cross-appellants.

D.G. Foulke, Tucson, for defendant, appellant, cross-appellee Ashburn.

## OPINION

LIVERMORE, Presiding Judge.

Defendant Richard Ashburn was engaged in debt collection as sole shareholder of defendant Interstate Corporate Systems, Inc. Plaintiff Southern Arizona Legal Aid, on behalf of a class headed by Natalie Nunez, sued Interstate in federal court in 1979 under the Fair Debt Collection Practices Act. In August 1983, Interstate offered judgment which was accepted by the class. An attorneys' fee award was made in January 1984. When Southern Arizona Legal Aid called Interstate's lawyer, Charles Giles, who had been Ashburn's attorney and the attorney for his many enterprises for twenty years, Giles said that

Interstate was defunct and that Southern Arizona Legal Aid would have trouble collecting its judgment. Indeed, when Ashburn was deposed in aid of collection, he refused, on Giles' advice, to answer questions seeking to trace where Interstate's assets had gone. Ultimately Nunez and Southern Arizona Legal Aid brought this action against Ashburn and two of his defunct corporations under the Arizona fraudulent conveyance statutes and recovered judgment against Ashburn personally for the amount of the former judgments, punitive damages in favor of Southern Arizona Legal Aid, and attorneys' fees. Ashburn argues on appeal that plaintiffs' claims are barred by the statute of limitations and that punitive damages and attorneys' fees were not recoverable. We affirm.

◼ Ashburn does not dispute that the complicated transfers of assets between Interstate, Ashburn, and Interstate's successor corporation, as well as those between him, Interstate's successor and that successor's successor, constitute fraudulent conveyances under A.R.S. § 44–1004. Nor does he dispute that Arizona courts have consistently held that the three-year statute in A.R.S. § 12–543 applies to fraudulent conveyance actions. *Rosenberg v. Rosenberg*, 123 Ariz. 589, 601 P.2d 589 (1979); *Molina v. Bennett*, 37 Ariz. 70, 289 P. 512 (1930); *Transamerica Insurance Co. v. Trout*, 145 Ariz. 355, 701 P.2d 851 (App.1985). What he does argue is that because A.R.S. § 44–1004 imposes liability regardless of fraudulent intent, and because no fraudulent intent at the time of transfer was shown in this case, the three-year fraud statute ought not apply and that any applicable shorter statute would bar plaintiffs' action. We are not disposed, even had we the power, to hold that the three-year statute applies to fraudulent conveyance actions unless no actual intent to defraud is shown. That would create a difficult problem for potential plaintiffs because a defendant's actual intent is rarely known; to be certain that an action was timely filed would require compliance with

some shorter statute. In effect, the ruling defendant seeks as a practical matter would shorten the statutory time for every plaintiff and thus undercut the earlier rulings that the three-year statute is applicable. Moreover, it would require litigation of an issue, intent to defraud, that is not otherwise an issue in the case. We see no reason to abandon clarity and predictability and to increase the issues to be tried solely to shorten the time in which a non-fraudulent individual is exposed to suit to recover what is rightfully owed.

◼ Ashburn next argues that the evidence does not support a punitive damage award. While the 1981 transfer of assets from Interstate to its successor could hardly have been specifically intended to defeat a 1984 judgment, there is ample evidence in the record to demonstrate that the transfer was used for that purpose. The jury could properly infer some glee in Ashburn's lawyer's statement to Southern Arizona Legal Aid that the judgment was unenforceable. So also, the lawyer's efforts to impede discovery of where Interstate's assets went indicate a clear refusal to comply with legal obligations. Shortly after Ashburn was ordered by the federal court to respond to questions about the initial transfer of assets from Interstate to its successor, Ashburn engineered another transfer of assets to yet another successor company. Finally, Ashburn's demonstrated animus toward Southern Arizona Legal Aid colors all these transactions. From it the jury could conclude that Ashburn intended to injure Southern Arizona Legal Aid.

◼ Under 15 U.S.C. § 1692k(a)(3) the award of reasonable attorneys' fees in any action to enforce liability under the Fair Debt Collection Practices Act is required. In our view, this provides statutory authority not only to award fees in the initial action but also in any action, such as this one, to enforce the judgment obtained in that initial action. Were we to hold otherwise, we would defeat the congressional purpose of encouraging the bringing of

suit by small claimants as a means of ending abusive debt collection practices by creating the impediment of substantial costs and fees to enforcing any judgment where the abusive debt collector has also engaged in a transfer in fraud of creditors.

Affirmed. Appellees are awarded their attorneys' fees on appeal in an amount to be determined upon filing the statement required by Rule 21, Ariz.R.Civ.App.P.

HATHAWAY and LACAGNINA, JJ., concur.