50 P.3d 852

**Eric Gregory MOORE and Patricia Mary Moore, husband and wife, Petitioners,**

**v.**

**Hon. Christopher C. BROWNING, Judge of the Superior Court of the State of Arizona, in and for the County of Pima, Respondent,**

**and**

**Leon Ulan, individually and as Co-Trustee of the Leon and Sylvia Ulan Revocable Trust of August 9, 1994, and Sylvia Ulan, individually and as Co-Trustee of the Leon and Sylvia Ulan Revocable Trust of August 9, 1994, Real Parties in Interest.**

**No. 2 SA–CA 2002–0021.**

Court of Appeals of Arizona, Division 2, Department B.

July 25, 2002.

John A. Baade, Tucson, for petitioners.

Malcolm K. Ryder, Tucson, McNamara, Goldsmith & Jackson, P.C., by Eugene N. Goldsmith, Tucson, for Real Parties in Interest.

## OPINION

ESPINOSA, Chief Judge.

¶1 Eric Gregory Moore and Patricia Moore, defendants in the underlying action for breach of contract and fraudulent transfer, seek special action relief from the respondent judge's order denying their motion for partial summary judgment. In that mo-

tion, the Moores had asked the judge to dismiss the cause of action for fraudulent transfer filed by real parties in interest Leon Ulan and Sylvia Ulan on the ground the cause of action has been extinguished by the statute of repose in the Uniform Fraudulent Transfer Act (UFTA). A.R.S. §§ 44–1001 through 44–1010. In accordance with the admonitions of our supreme court, we generally decline to accept jurisdiction of a special action petition challenging a trial court's denial of a motion for summary judgment. *See Piner v. Superior Court,* 192 Ariz. 182, 962 P.2d 909 (1998); *City of Phoenix v. Yarnell,* 184 Ariz. 310, 909 P.2d 377 (1995); *Ft. Lo-well–NSS Ltd. Partnership v. Kelly,* 166 Ariz. 96, 800 P.2d 962 (1990). As the supreme court has noted, however, there are "a few exceptional cases" in which it is appropriate to accept jurisdiction. *Piner,* 192 Ariz. 182, ¶ 8, 962 P.2d 909, ¶ 8; *see also In re Guardianship/Conservatorship of Denton,* 190 Ariz. 152, 945 P.2d 1283 (1997); *Orme School v. Reeves,* 166 Ariz. 301, 802 P.2d 1000 (1990). We believe this is such a case.

■ ¶ 2 First, the issue is one of law, requiring the interpretation of a statute and the determination of what law applies. *See Piner, Denton.* Moreover, it presents a case of first impression that will affect other cases in the state. *Piner, Denton.* In addition, we can adequately determine the legal issue on the record before us. *See Piner.* More importantly, however, petitioners have no "equally plain, speedy, and adequate remedy by appeal." Ariz.R.P. Special Actions 1(a), 17B A.R.S. Because the respondent judge ruled that the limitations period does not begin until the debtor obtains a judgment on the underlying debt, the impending trial will not address the issue of when the Ulans actually did or reasonably could have discovered the alleged fraudulent nature of the subject transfers, an essential part of the Moores' statute of repose defense. Because that issue must inevitably be determined, it makes little sense for us to permit the trial to proceed knowing that it will not then be addressed. *See Harris Trust Bank of Ariz. v. Superior Court,* 188 Ariz. 159, 162, 933 P.2d 1227, 1230 (App.1996) (special action jurisdiction accepted in part because "error presented ... would ultimately result in re-versal"). Accordingly, we conclude it is appropriate for us to accept special action jurisdiction. We do so and grant the Moores partial relief.

### Facts and Procedural Background

¶ 3 The Ulans sued the Moores in 1998 for breach of contract, alleging they had defaulted on a promissory note executed in 1985 that the Ulans had purchased in 1995 from the Resolution Trust Corporation, the receiver for the savings and loan association that had lent the Moores money. In July 2001, the Ulans moved to amend their complaint to add a cause of action for fraudulent transfer. The respondent judge granted the motion on September 10, and the Ulans filed their second amended complaint on September 13. The Moores later moved for partial summary judgment, arguing the UFTA statute of repose had extinguished the Ulans' new cause of action. *See* § 44–1009. The respondent judge denied the motion, concluding that the statutory period does not begin until judgment is entered on the underlying debt. The special action petition followed.

¶ 4 In their amended complaint, the Ulans alleged that Greg Moore had solicited Leon Ulan to purchase the promissory note at an auction held in Kansas City, Missouri, and had agreed to repay Ulan's costs of purchasing the note plus interest at eighteen percent per year. The Ulans also alleged that the Moores had transferred the majority of their assets to other persons with the intent to hinder, delay, or defraud their creditors and without receiving adequate consideration in exchange. According to the complaint, the Moores had transferred their stock in Laundryman of Arizona, Inc., and ownership of their residence to family trusts created in the Cook Islands, transfers the Ulans had only recently discovered. The Ulans alleged that the transfers violated UFTA, entitling them to garnish the property from the fraudulent transferees, to avoid the transfers to the extent necessary to satisfy the Ulans' claim, or to attach the assets to secure their claim.

¶ 5 In their summary judgment motion, the Moores argued that § 44–1009, the statute of repose in UFTA, had extinguished the

Ulans' cause of action because they had filed it more than four years after the 1989 transfers and more than one year after they had discovered or should have discovered the allegedly fraudulent nature of the transfers. Because the Ulans do not dispute that the transfers occurred in 1989, if UFTA applies as written, their only viable claim under the Act requires them to show they did not actually discover and reasonably could not have discovered the fraudulent nature of the transfers earlier than one year before they filed their amended complaint on September 13, 2001.

¶ 6 Despite having expressly cited only UFTA in their complaint, the Ulans asserted in their response to the Moores' summary judgment motion that they had also alleged a common law cause of action for fraudulent transfer. Because the Moores did not contest that assertion and the respondent judge accepted it, we accept it as well. The Ulans argued that the general rule at common law was that the period of limitations does not begin until the creditor has obtained a judgment against the debtor on the underlying debt.

¶ 7 In his minute entry denying the motion for summary judgment, the respondent judge noted that, "[u]nder a strict reading of the statute, with no further analysis, the [Moores] appear to have made a strong argument that the [Ulans'] claims of fraudulent transfers are time-barred." But the judge agreed with the Ulans that they had stated a cause of action under the common law as well as under UFTA, concluding, without further discussion, that their common law claims were therefore timely. The judge noted the strong public policy that favors resolving cases on their merits instead of dismissing them as barred by the statute of limitations. Finally, relying on a California case and public policy, the judge concluded that, for a cause of action under UFTA, the statute of limitations period does not begin until the underlying claim has been reduced to judgment.

## Common Law Cause of Action for Fraudulent Conveyance

¶ 8 As a threshold matter, we must determine whether a common law cause of action for fraudulent conveyance continues to exist under Arizona law or whether, as the Moores contend, UFTA has displaced any body of common law on fraudulent conveyances. In order to adequately address that issue, however, we must first trace the history of the law on fraudulent conveyances in Arizona.

### a. *The Statutes*

¶ 9 Under the early common law in England, a property owner "had absolute dominion over his own property." *Rochester v. Sullivan,* 2 Ariz. 75, 79, 11 P. 58, 59 (1886). Parliament adopted legislation in 1570, known as the Statute of Elizabeth, that limited an owner from conveying his property with "the express or implied intent to hinder, delay, or defraud his creditors." *Id.; see also* 37 C.J.S. *Fraudulent Conveyances* § 3 (1997). In its earliest territorial code, the Howell Code of 1864, Arizona declared such conveyances void. Howell Code ch. XXXVI, §§ 1, 3, 11, 20 (1864). In addition, those statutes declared void certain types of conveyances not made in writing, proclaimed as conclusive evidence of fraud sales of goods and chattels not accompanied by immediate delivery, made the question of the grantor's fraudulent intent one of fact, and prohibited a court from finding that a conveyance was fraudulent based solely on the lack of valuable consideration. Howell Code ch. XXXVI, §§ 6, 8, 12, 13, 15, 21, 23. Similar provisions were included in the 1887, 1901, and 1913 revised codes. Rev.Stat.Ariz. §§ 2030 through 2038 (1887); Rev.Stat.Ariz. §§ 2696 through 2708 (1901); Rev.Stat.Ariz. Civil Code §§ 3272 through 3282 (1913).

¶ 10 In 1919, Arizona enacted the Uniform Fraudulent Conveyance Act (UFCA). 1919 Ariz.Sess.Laws, ch. 131, §§ 1 through 14. With that Act, the statutes requiring certain transactions to be in writing and accompanied by immediate delivery were separated from the statutes making fraudulent conveyances void. For the first time, the fraudulent conveyance statutes expressly stated the remedies available to a creditor whose debtor had fraudulently conveyed his or her assets. Section 9 listed the rights available to creditors whose claims had matured, and § 10

listed the rights available to creditors whose claims had not yet matured. And, a creditor was defined as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." 1919 Ariz.Sess.Laws, ch. 131, § 1. The Uniform Act was proposed to obtain uniformity in the law of fraudulent conveyances, based on the reality that business in America is conducted across state lines and that the United States Constitution requires uniform laws on bankruptcy. Prefatory Note to 1918 Unif. Fraudulent Conveyance Act, 7A Pt. II U.L.A. 2 (1998). That comment also observed: "There are few legal subjects where there is a greater lack of exact definition and clear understanding of boundaries [than the law of fraudulent conveyances]." *Id.* UFCA was intended to change that state of affairs. *See* 1919 Ariz.Sess.Laws, ch. 131, § 12 ("This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.").

¶ 11 Finally, Arizona enacted the Uniform Fraudulent Transfer Act in 1990, substituting its provisions for those of UFCA.1990 Ariz.Sess.Laws, ch. 17, §§ 1, 2. In that Act, "creditor" is defined as "a person who has a claim," and "claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated fixed, contingent, matured, unmatured, undisputed, legal, equitable, secured or unsecured." § 44–1001(3) and (2). In accordance with those definitions, the section on remedies available to creditors does not distinguish between those with judgments and those without. § 44–1007.

b. *The Cases*

¶ 12 The Ulans argue it "defies logic" to contend, as the Moores do, that Arizona does not recognize a common law cause of action for fraudulent conveyance. They rely, as did the respondent judge, on *O'Doherty v. Toole*, 2 Ariz. 288, 15 P. 28 (1887), correctly noting that the supreme court did not mention the Howell Code provisions on fraudulent conveyance in that case. But the issue before that court was whether a creditor's failure to timely file a claim against the husband's es-

tate for the husband's fraudulent conveyance of property to his wife had resulted in the creditor's losing the right to seek payment of his debt from the wife's subsequent grantee. And, because the Howell Code sections did not address procedure or provide remedies other than declaring that the conveyance was void, there would have been no need for the court to cite the statutes. *See* Howell Code ch. XXXVI, §§ 1 through 26.

¶ 13 Although the Ulans acknowledge the existence of the Howell Code statutes, they nevertheless insist that "Arizona Courts have long recognized an equitable common law fraudulent transfer action." They base that assertion, however, on only a few Arizona cases, relying in addition on cases from other jurisdictions, which, by definition, cannot resolve the issue of whether a common law cause of action for fraudulent conveyance remains viable in Arizona. Moreover, we disagree with their interpretation of the Arizona cases.

¶ 14 The Ulans contend, for instance, that the court recognized an equitable action for fraudulent transfer in *First National Bank of Globe v. McDonough*, 19 Ariz. 223, 168 P. 635 (1917). But, an equitable action is not the equivalent of a common law action. We note as well that the dissent in *McDonough* cited the statute on fraudulent conveyances. Thus, the case does not assist the Ulans.

¶ 15 The Ulans also cite *Pearce v. Stone*, 149 Ariz. 567, 720 P.2d 542 (App.1986). In that case, Division One of this court stated that the lawsuit for conspiracy to commit a fraudulent conveyance had been filed pursuant to the criminal statute prohibiting fraudulent schemes and artifices, the racketeering statutes, and "the common law of fraudulent conveyance." 149 Ariz. at 569, 720 P.2d at 544. In reciting the facts, however, the court stated the plaintiff had alleged that the defendant had made fraudulent conveyances in violation of UFCA. In a subsequent footnote, the court pointed out that, despite the plaintiff's mention of a common law action for fraudulent conveyance, he had argued only that the defendant had violated UFCA. Accordingly, the court limited its discussion to the elements of a fraudulent conveyance under UFCA and did not address the issue of

whether a common law cause of action remained after UFCA was adopted. We note, moreover, that previous case law had held that a cause of action for conspiracy to commit a fraudulent conveyance "is a cause of action apart from the UFCA." *McElhanon v. Hing,* 151 Ariz. 386, 393, 728 P.2d 256, 263 (App.1985), *aff'd in part and vacated in part on other grounds,* 151 Ariz. 403, 728 P.2d 273 (1986). *Pearce* does not support the Ulans' proposition, and any implication in it that a common law cause of action for fraudulent conveyance remained viable after UFCA was enacted is simply dictum.

¶ 16 We also find it significant that other early fraudulent conveyance cases in Arizona recited the applicable statutes. In *Rochester,* for instance, a case decided before *O'Doherty,* the court cited the 1877 statutes, noting they were Arizona's version of the Statute of Elizabeth. In *Rountree v. Marshall,* 6 Ariz. 413, 59 P. 109 (1899), the court quoted the 1887 version of the statutes, and in *Lewis v. Herrera,* 10 Ariz. 74, 85 P. 245 (1906), the court quoted the 1901 version. Similarly, the court quoted the 1913 statutes in *Arizona State Bank v. Crystal Ice & Cold Storage Co.,* 26 Ariz. 82, 222 P. 407 (1924), and in *Wightman v. King,* 31 Ariz. 89, 250 P. 772 (1926).

¶ 17 In addition, most of the cases decided while UFCA was in effect cited its provisions. *See, e.g., Sackin v. Kersting,* 105 Ariz. 464, 466 P.2d 758 (1970); *Linder v. Lewis, Roca, Scoville & Beauchamp,* 85 Ariz. 118, 333 P.2d 286 (1958); *Barr v. Petzhold,* 77 Ariz. 399, 273 P.2d 161 (1954); *Neal v. Clark,* 75 Ariz. 91, 251 P.2d 903 (1952); *Flath v. Neal,* 63 Ariz. 68, 159 P.2d 617 (1945); *Ollason v. Glasscock,* 26 Ariz. 193, 224 P. 284 (1924); *Clark v. Rossow,* 134 Ariz. 490, 657 P.2d 903 (App.1982); *Wallin v. Scottsdale Plumbing Co.,* 27 Ariz.App. 591, 557 P.2d 190 (1976); *Zellerbach Paper Co. v. Valley Nat'l Bank,* 13 Ariz.App. 431, 477 P.2d 550 (1970); *Hay v. Duskin,* 9 Ariz.App. 599, 455 P.2d 281 (1969); *Cashion Gin Co. v. Kulikov,* 1 Ariz. App. 90, 399 P.2d 711 (1965). And, even in the cases that did not mention it, citation to the Act would not have been necessary to decide the issues involved. *See, e.g., Torosian v. Paulos,* 82 Ariz. 304, 313 P.2d 382 (1957); *Holliday v. Salling,* 54 Ariz. 496, 97 P.2d 221 (1939); *Dunseath v. Tucson Golf & Country Club,* 51 Ariz. 14, 74 P.2d 43 (1937); *Greene v. Reed,* 15 Ariz.App. 110, 486 P.2d 222 (1971).

c. *Effect of UFTA's Adoption on the Common Law*

¶ 18 We find it more helpful to consider the effect of Arizona's adoption of UFTA on any common law cause of action for fraudulent conveyance that might have survived its enactment. In addition to providing comprehensive remedies for all creditors unable to collect from debtors who have fraudulently conveyed their assets, UFTA expressly applies to all types of properties, conveyances, and rights to payment. § 44–1001. The Act governs transfers fraudulent as to both present and future creditors, defines when a transfer has been made or an obligation incurred, and establishes what constitutes adequate value for a transfer. §§ 44–1004, 44–1006, and 44–1003. Finally, the Act enumerates available defenses, states the kinds of transferees against whom a creditor may obtain judgment, and adopts a statute of limitations expressly tailored for fraudulent transfers. §§ 44–1008 and 44–1009.

¶ 19 The Act also provides: "Unless displaced by the provisions of this article, the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency or other validating or invalidating clause, supplement its provisions." § 44–1010; *see Linder* (establishing that conveyance was fraudulent does not require proof of nine elements of common law fraud); *In re Marriage of Benge,* 151 Ariz. 219, 726 P.2d 1088 (App.1986) (same); *Cashion Gin Co.* (same). We find it notable that § 44–1010 does not mention retaining any principles of the common law of fraudulent conveyance.

¶ 20 But, most telling, the Ulans have nowhere cited any case setting out the elements of and rules applicable to a common law cause of action for fraudulent conveyance. They simply assert they alleged a common law cause of action in an effort to have the three-year statute of limitations apply in-

stead of the statute of repose in § 44–1009. Because neither the territorial and early statehood statutes nor UFCA contained an express statute of limitations, the courts applied the general statute of limitations for fraud, now found in A.R.S. § 12–543(3). *See Rosenberg v. Rosenberg,* 123 Ariz. 589, 601 P.2d 589 (1979); *Molina v. Bennett,* 37 Ariz. 70, 289 P. 512 (1930); *Alsdorf v. Hampton,* 33 Ariz. 506, 266 P. 16 (1928); *Nunez v. Interstate Corp. Sys.,* 165 Ariz. 410, 799 P.2d 30 (App.1990); *Transamerica Ins. Co. v. Trout,* 145 Ariz. 355, 701 P.2d 851 (App.1985). The Ulans' desire to have the three-year statute of limitations apply, however, is an insufficient basis for us to conclude that a common law cause of action remains viable despite the enactment of UFTA. Considering the legal history and the Ulans' authorities, we conclude that UFTA has displaced any common law cause of action for fraudulent conveyance and find that the respondent judge erred in concluding otherwise.

## Statute of Limitations Under UFTA

■ ¶ 21 We next address the respondent judge's determination that the limitations period in § 44–1009 does not begin until judgment is entered on the underlying debt. We review *de novo* a trial court's interpretation and application of a statute, keeping in mind that our primary focus is "to discern and give effect to legislative intent." *Hobson v. Mid–Century Ins. Co.,* 199 Ariz. 525, ¶ 8, 19 P.3d 1241, ¶ 8 (App.2001). In doing so, we first examine the language of the statute. *Norgord v. State ex rel. Berning,* 201 Ariz. 228, 33 P.3d 1166 (App.2001). Only if the language is unclear or ambiguous or the asserted interpretation would "lead to an absurd result," *Strojnik v. General Insurance Co. of America,* 201 Ariz. 430, ¶ 19, 36 P.3d 1200, ¶ 19 (App.2001), do we consider "the statute's context, subject matter, historical background, effects, consequences, spirit, and purpose." *Hobson,* 199 Ariz. 525, ¶ 8, 19 P.3d 1241, ¶ 8.

¶ 22 Section 44–1009 provides:

A claim for relief with respect to a fraudulent transfer or obligation under this article is extinguished unless an action is brought:

1. Under § 44–1004, subsection A, paragraph 1 within four years after the transfer was made or the obligation was incurred or, if later, within one year after the fraudulent nature of the transfer or obligation was or through the exercise of reasonable diligence could have been discovered by the claimant.

2. Under § 44–1004, subsection A, paragraph 2 or § 44–1005, within four years after the transfer was made or the obligation was incurred.

Section 44–1004, in turn, provides in part:

A. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation under any of the following:

1. With actual intent to hinder, delay or defraud any creditor of the debtor.

2. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

(a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(b) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. . . .

¶ 23 As the respondent judge observed, a strict reading of § 44–1009 appears to support the Moores' contention that the statute of repose has extinguished the Ulans' claim, unless the Ulans can establish that, "through the exercise of reasonable diligence," they did not discover and could not have discovered the fraudulent nature of the Moores' transfers earlier than one year before they filed their amended complaint.[1] § 44–

---

1. Because the Moores showed they were entitled to summary judgment on their statute of repose defense once they established the alleged fraudu-

lent transfers had been made in 1989, the burden of proof then shifted to the Ulans to establish that the statutory period was tolled by the discovery

1009(A)(1). Nothing in the language of the statute either expressly or implicitly requires that a creditor first obtain a judgment on the underlying debt. On its face, the statute simply requires that a creditor who claims to have been defrauded by his or her debtor's transfer of property file an action within four years of the actual transfers or within one year of actual or constructive discovery of the fraudulent nature of the transfers.

¶ 24 Moreover, as noted above, the Act itself expressly applies both to creditors with judgments and to those without judgments, not distinguishing between them except in one instance. Section 44–1007 provides in part:

A. In an action for relief against a transfer or obligation under this article, a creditor, subject to the limitations in §§ 44–1008 and 44–1009, may obtain one or more of the following remedies:

1. Garnishment against the fraudulent transferee or the recipient of the fraudulent obligation, in accordance with the procedure prescribed by Law [sic] in obtaining such remedy.

2. Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.

3. An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by law in obtaining such remedy.

. . . .

B. Subject to the limitations in §§ 44–1008 and 44–1009, if a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

We find it notable that, although § 44–1007 states a particular rule on the remedies available to a creditor armed with a judgment and expressly refers to the statute of repose, § 44–1009, it does not condition the start of the applicable limitations period on a creditor's first obtaining a judgment. In fact, subsection (B) specifically renders a creditor

rule. See Logerquist v. Danforth, 188 Ariz. 16,

with a judgment subject to the limitations in § 44–1009.

¶ 25 We find further evidence that Arizona does not require a creditor to first obtain a judgment before suing to set aside a fraudulent conveyance in Rule 18(b), Ariz.R.Civ.P., 16 A.R.S., Pt. 1. That rule provides:

Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action, but the court shall grant relief in that action only in accordance with the relative substantive rights of the parties. In particular, a plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to that plaintiff, without first having obtained a judgment establishing the claim for money.

That rule has been in existence since 1939. Ariz.Code Ann. § 21–508 (1939).

¶ 26 Although acknowledging that "a strict reading of the statute" of repose may well foreclose the Ulans' cause of action, the respondent judge concluded, based on a California case, that the limitations period does not begin until the creditor obtains a judgment. The judge noted that, if Arizona law has not addressed an issue, we "look[ ] approvingly to the laws of California," especially when interpreting a similar or identical statute. The caveat to that principle, however, is that we "follow the California cases in so far as their reasoning is sound." State v. Vallejos, 89 Ariz. 76, 82, 358 P.2d 178, 182 (1960). In this instance, we find the California court's reasoning unsound.

¶ 27 In Cortez v. Vogt, 52 Cal.App.4th 917, 60 Cal.Rptr.2d 841, 848 (1997), the California Court of Appeal relied on legislative material accompanying the Act, a previous California decision, and a policy analysis to conclude that a creditor "has an option to establish creditor status by judgment," which, it found, tolled the statute of repose until the judgment becomes final. We believe the court misread the legislative material, find no counterpart to the previous decision in Arizona case law, and conclude that analyzing

932 P.2d 281 (App.1996).

policy is inappropriate in construing the statute of repose.

■ ¶ 28 Unlike the court in *Cortez*, we are unable to discern from a simple reference in the statute of repose section, § 44–1009, to the remedies section, § 44–1007, any intent to toll the statute of repose until a judgment is filed, in the absence of express language to that effect. Nor do we find persuasive the California Supreme Court's decision in *Adams v. Bell*, 5 Cal.2d 697, 56 P.2d 208 (1936), on which the court in *Cortez* relied. *Adams* applied the common law rule that a cause of action for fraudulent conveyance ordinarily accrues on the date the creditor obtains a judgment against the debtor. But Arizona case law did not impose that requirement. As the court held in *McDonough*, decided in 1917, a creditor in Arizona could sue in the same action to establish both the underlying debt and the fraudulent conveyance. In addition, *McDonough* had long since rejected the public policy the respondent judge declared that questioned the efficiency of permitting a creditor to sue on both claims at the same time, a policy the legislature also rejected in enacting UFTA, which expressly permits a creditor without a judgment to challenge a debtor's conveyance as fraudulent. Moreover, the legislature's declaration of public policy governs our interpretation of the statute. *See Taylor v. Graham County Chamber of Commerce*, 201 Ariz. 184, 33 P.3d 518 (App.2001).

¶ 29 Other jurisdictions agree with our conclusion that the California Court of Appeal erred in ruling that the statute of repose period in UFTA is tolled until the creditor obtains a judgment. As an Illinois appellate court observed in rejecting the reasoning of *Cortez*, "[w]e are not in the position to question the wisdom of the procedure necessitated by the Act or to explore alternative methods that may prove more efficient." *Levy v. Markal Sales Corp.*, 311 Ill.App.3d 552, 244 Ill.Dec. 120, 724 N.E.2d 1008, 1012 (2000). Relying instead on the plain language of the Act, the court held that "the Act displaced the judgment requirements under the pre-existing law." *Id.* at 125, 724 N.E.2d at 1013. The Supreme Court of New Jersey also rejected *Cortez*, noting that, under "the explicit language" of UFTA, "the four-year provision runs from the date of transfer rather than the date of judgment." *SASCO 1997 NI, LLC v. Zudkewich*, 166 N.J. 579, 767 A.2d 469, 473 (2001). And, the court said, "[t]hat language is the surest indicator of the Legislature's intent." *Id.*

¶ 30 In rejecting the argument that the statute of repose period does not begin until the creditor obtains a judgment, the Montana Supreme Court held that "UFTA clearly altered if not broadened the 'accrual upon judgment' rule" the court had applied in a previous case. *Gulf Ins. Co. v. Clark*, 304 Mont. 264, 20 P.3d 780, ¶ 30 (2001). In doing so, the court pointed out that the "persistent assumption" that a creditor may not assert a claim under UFTA without first having obtained a judgment "represents a fundamental misunderstanding of the law under UFTA." *Id.* at ¶ 24. And, although decided before *Cortez*, a New Mexico case held that the statute of repose applies as written, rejecting the plaintiff's contention that the limitation period began with the date of entry of a judgment assigned to the plaintiff. *First Southwestern Fin. Servs. v. Pulliam*, 121 N.M. 436, 912 P.2d 828 (Ct.App.1996).

### Conclusion

¶ 31 We conclude that the respondent judge erred in ruling that a separate common law cause of action for fraudulent conveyance exists or survived the passage of UFTA and in applying the rule in *Cortez* tolling the statute of repose in § 44–1009 until after the creditor obtains a judgment. We construe that statute as written, finding no reason to deviate from the first rule of statutory construction. We do not address the Ulans' additional arguments attacking the statute because the respondent judge did not address them. Accordingly, the Ulans were required to file their amended complaint alleging a cause of action for fraudulent transfer within one year of their actual or constructive discovery of the fraudulent nature of the transfers. The Ulans must establish that they did not know and reasonably could not have known the fraudulent nature of the transfers before September 14, 2000, one year before they filed their amended com-

plaint. Because that issue requires a factual determination, *see Walk v. Ring,* 202 Ariz. 310, 44 P.3d 990 (2002), it is not an issue this court can resolve.

¶ 32 We grant the Moores partial relief and vacate that portion of the respondent judge's order of February 28, 2002, denying the Moores' motion for partial summary judgment and order that they be permitted to litigate the merits of their statute of repose defense.

HOWARD and FLÓREZ, JJ., concurring.