No. 00-597

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 45

GULF INSURANCE COMPANY,

a Missouri Corporation; and SECURITY INSURANCE

OF HARTFORD, a Connecticut Corporation,

Plaintiffs and Appellants,

v.

DONALD E. CLARK, a.k.a. DON EVERETT CLARK;

and CLARK AND ASSOCIATES, INC.,

a Montana Corporation,

Defendants and Respondents.

APPEAL FROM: District Court of the Twentieth Judicial District,

In and for the County of Lake,

The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Debra C. Parker, Connell Law Firm, Missoula, Montana

For Respondents:

James C. Bartlett, Kalispell, Montana

Submitted on Briefs: February 8, 2001
Decided: March 20, 2001

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Gulf Insurance Company (Gulf) and Security Insurance of Hartford ( Security) appeal the summary judgment entered by the Twentieth Judicial District Court, Lake County, in favor of the Defendants, Donald Clark and Clark and Associates, Inc. (Clark). Gulf and Security contend that the District Court erred as a matter of law by applying the wrong statute of limitations to their claim brought under Montana's Uniform Fraudulent Transfer Act.

¶2 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 This controversy commenced in April of 1995, when Gulf and Security brought an action in federal district court in California against Clark and other parties. The action resulted from indemnity bond agreements concerning government construction contracts that had been breached by Clark and the other parties. Gulf and Security performed under the agreements--meaning they completed performance under the contracts subsequent to Clark's and the other parties' default--and then demanded reimbursement pursuant to the underlying indemnity contract.

¶4 Gulf and Security eventually prevailed after the defendants failed to appear, and were awarded default judgments on August 25, 1997--approximately $573,000 in favor of Gulf and approximately $56,000 in favor of Security.

¶5 Meanwhile, it is undisputed that in May and June of 1995, Clark recorded five deeds

conveying tracts of real property in Lake County from himself to Clark and Associates, Inc., a Montana corporation. Clark's son is the sole shareholder of this corporation. Gulf and Security alleged that these transfers were made with the actual intent to prevent Gulf and Security from executing judgment against Clark, individually, and were made without Clark receiving the reasonably equivalent value as consideration. They further alleged that the transfers were made to an "insular transferee" and that Clark, individually, retained possession and control of the properties after the transfers were completed.

¶6 On July 21, 1999, Gulf and Security docketed their federal court judgment in federal district court in Montana. At that time, Gulf and Security also filed a verified complaint in state district court, seeking to have Clark's alleged fraudulent conveyances deemed void under Montana's Uniform Fraudulent Transfer Act (hereinafter UFTA). This action was filed within two years of the federal judgment being entered in their favor.

¶7 Clark moved for summary judgment on June 7, 2000, asserting, in part, that the applicable statute of limitations under UFTA extinguished the fraudulent transfer claim.

¶8 The District Court agreed with Clark and entered judgment in his favor on August 4, 2000. The court reasoned that under the clear mandate of § 31-2-341, MCA, under UFTA, a cause of action with respect to a fraudulent transfer must be brought within two years of the transfer itself, or, alternatively, within one year of the reasonable discovery of the transfer by the claimant.

¶9 Numerous affidavits before the court indicated that Gulf and Security were aware that Clark resided in Flathead County at the time the original indemnity agreements were entered in 1993, and then, in 1995 and 1996, the two parties used the services of several private investigators in collecting information on Clark's whereabouts in Flathead County for the purpose of establishing proper service so that the default judgment could be entered. In light of these uncontested facts, the court determined that Gulf and Security's claims missed the two-year-of-transfer deadline, and the five deeds conveyed by Clark in 1995 could reasonably have been discovered by Gulf and Security "at anytime following the date of recording. . . ."

¶10 Gulf and Security appeal the judgment of the District Court.

## DISCUSSION

¶11 The lone issue on appeal is whether the District Court erred when it ruled in its order granting summary judgment in favor of Clark that Gulf and Security's fraudulent conveyance claim was time-barred by the statute of limitations under Montana's Uniform Fraudulent Transfer Act, §§ 31-2-326 through 342, MCA (hereinafter UFTA). We note that another underlying issue in this matter--whether the default judgment was valid--was not addressed by the District Court and is therefore not before this Court on appeal.

¶12 This Court reviews an order granting summary judgment *de novo*, using the same Rule 56, M.R.Civ.P., criteria applied by the district court. *See Spinler v. Allen*, 1999 MT 160, ¶ 14, 295 Mont. 139, ¶ 14, 983 P.2d 348, ¶ 14.

¶13 Ordinarily, this Court looks to the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits to determine the existence or nonexistence of a genuine issue of material fact. *See Erker v. Kester*, 1999 MT 231, ¶ 17, 296 Mont. 123, ¶ 17, 988 P.2d 1221, ¶ 17. Here, Gulf and Security concede that no material facts remain at issue; rather this appeal focuses squarely on a question of law concerning the applicable statute of limitations. The standard of review for questions of law is whether they are correct. *See Albright v. Department of Revenue* (1997), 281 Mont. 196, 205, 933 P.2d 815, 821.

¶14 The question of law here involves an ancillary remedy, one that offers a creditor with a claim against a debtor the legal means to preserve its right to compensatory redress. Generally, UFTA addresses transfers of property that have already occurred. Under § 31-2-339, MCA, for example, an ancillary action may be brought by a creditor that (1) voids a previous transfer by the debtor, or (2) places an attachment on a transferred asset or other property in the hands of a transferee; or (3) enjoins either the debtor or transferee from further disposition of the transferred asset or other property. The statute also permits the appointment of a receiver and "any other relief the circumstances may require." *See* § 31-2-339(1)(a) through (c), MCA. Finally, if the creditor has attained a judgment against the debtor, the creditor may levy execution on the transferred asset or its proceeds. *See* § 31-2-339(2), MCA.

¶15 Here, it is undisputed that Gulf and Security's "claim" or right to payment arose before the transfers were made. Although the record is not clear on precisely when the breach occurred--apparently some time in 1993--the action in California commenced on April 25, 1995, and the transfers in question occurred in May and June of 1995. Reading § 31-2-333 and 334, MCA together, the following may establish the liability of a debtor as to a creditor, whose "claim" arose *before* the transfer was made, if one of the following occur:

(1) the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor. *See* § 31-2-333(1)(a), MCA.

(2) the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor: (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. *See* § 33-2-333(1)(b), MCA.

(3) the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer. *See* § 31-2-334(1), MCA.

(4) the transfer was made to an "insider" for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent. *See* § 31-2-334(2), MCA.

¶16 The foregoing actions are subject to an explicit statute of limitations, however, under § 31-2-341, MCA, which bars a creditor's right to bring an UFTA claim unless the action is commenced:

(1) within two years after the transfer was made, or, if later, within one year after the transfer was or could reasonably have been discovered by the claimant, for transfers subject to § 31-2-333(1)(a), MCA.

(2) within 2 years after the transfer was made for transfers subject to §§ 31-2-333(1)(b) or 31-2-334(1), MCA.

(3) within 1 year after the transfer was made for transfers subject to § 31-2-334(2), MCA.

Here, the claim asserted by Gulf and Security--that Clark transferred the assets with the intent to "hinder, delay, or defraud"--is afforded the most lenient statute of limitations, under § 31-2-341(1), MCA, which means they had either two years after the transfers were made, or one year after the transfers were or could have reasonably been discovered by Gulf and Security, to file suit.

¶17 Gulf and Security correctly point out that the statute of limitations under UFTA has not been fertile ground for the development of case law in Montana. Thus, in assisting our analysis here and in the future, our application of § 31-2-341(1), MCA, can be broken down into a three-step inquiry as follows:

> (1) first, did the creditor bring his UFTA claim within one year of "discovering," i. e., acquiring actual knowledge, of the transfer?

Contrary to the general focus of the parties' arguments, under UFTA, *discovery of the transfer*--not the date of the transfer itself--is the gravamen of the statute of limitations under § 31-2-341(1), MCA. If the answer to this first inquiry is an uncontested yes, then the creditor's claim may proceed regardless of *when the transfer occurred*, or when or if a judgment was entered. The second prong of our analysis addresses the question raised by the statute itself:

> (2) is the date that the creditor claims he "discovered" the transfer reasonable?

Here, a court's discretion may be invoked, where the rule focuses on the diligence of the creditor weighed against the stealth of the debtor under any given set of circumstances. To illustrate, suppose the creditor claims that he did not "discover" or acquire actual knowledge of a 1995 transfer until August of 1998, and then filed his UFTA claim in July of 1999, within the one-year limitation period. The debtor may challenge this by presenting evidence that the creditor could have "reasonably discovered" the transfer much earlier. *See* § 25-4-301, MCA (providing that if a statute of limitations allegation is controverted, "the party pleading must establish, on the trial, the facts showing that the cause of action is so barred").

¶18 After this inquiry is resolved, if the answer is still yes, that it would be *unreasonable* to charge the creditor with knowledge of the transfer beyond one year prior to the date that the UFTA claim was filed, the creditor may proceed. If the answer is no--that a diligent creditor could have and should have discovered the transfer more than one year prior to filing his claim--then we proceed to our third and final prong:

> (3) did the creditor nevertheless file his UFTA claim within two years of the debtor's transfer?

Again, if the answer is yes, then the creditor's UFTA claim may proceed. If the answer is no, then a claim brought under § 33-2-333(1)(a), MCA, is barred pursuant to the explicit terms of the Act, under § 31-2-341(1), MCA.

¶19 Applied to the case *sub judice*, the burden of establishing the facts necessary to bar Gulf and Security's UFTA claim rests with Clark, pursuant to § 25-4-301, MCA. Therefore, in order to prevail as a matter of law on a motion for summary judgment Clark must establish as undisputed that (1) Gulf and Security discovered or could reasonably have discovered the transfers more than one year before the claim was filed; and (2) the transfers occurred more than two years before the claim was filed.

¶20 We conclude that the District Court did not err in determining that Clark met his burden. Clark presented uncontested evidence that Gulf and Security knew that Clark resided in Flathead County at the time the original indemnity agreement was entered in 1993. Further, Clark presented uncontested evidence that Gulf and Security, in late 1995 and 1996, hired private investigators to locate Clark for the purpose of establishing personal service in the underlying action. At that time, investigators confirmed his address in Big Fork--which is described as a ranch--but were unable to personally locate him. It is uncontested that all five transfers of property at issue had recently been recorded in Flathead County at that time, and could easily have been discovered with a reasonable amount of diligence.

¶21 Added to the foregoing is the glaring fact that Gulf and Security have failed to assert precisely when they discovered the transfers, or otherwise argue when they could have reasonably discovered the transfers, in relation to bringing their UFTA claim in July of 1999. Further, oddly enough, they have not contested the order of the District Court on these statutory grounds. Finally, it is beyond dispute that the UFTA claim here was filed more than two years after the transfers, which extinguishes any claims pursuant to the more stringent statute of limitations under § 31-2-341(1), (2) and (3), MCA.

¶22 Accordingly, based on our *de novo* review, we hold that the District Court did not err when it concluded that the transfers could have been reasonably discovered more than one year prior to Gulf and Security bringing this claim in 1999.

¶23 Despite the explicit requirements under UFTA, Gulf and Security nevertheless contend that as a matter of law and of public policy the statute of limitations should not have commenced in this action until they obtained the default judgment against Clark in

August of 1997 in California.

¶24 As far as the law is concerned, Gulf and Security vigorously argue under the mistaken assumption that a creditor may not assert an UFTA claim until after the underlying judgment is entered. This persistent assumption represents a fundamental misunderstanding of the law under UFTA.

¶25 Gulf and Security base their theory on our decision in *Murphy v. Atkinson* (1993), 262 Mont. 164, 864 P.2d 273, as well as a recent appellate court decision from California, *Cortez v. Vogt* (Cal.Ct.App. 1997), 60 Cal.Rptr.2d 841, 853-54 (holding that, in view of legislative statements of policy and purpose of the UFTA as a "cumulative and additional remedy," limitation period did not commence until debtor-creditor relationship existed after judgment was made final). In *Murphy*, we determined that a cause of action for a fraudulent conveyance does not accrue, and therefore the statutory period does not begin to run, until a judgment is obtained. *See Murphy*, 262 Mont. at 168-69, 864 P.2d at 275-76 (relying on *Finch v. Kent* (1900), 24 Mont. 268, 279, 61 P. 653, 658 (action for "creditors' bill"), and § 27-2-203, MCA, which provides statute of limitation for fraud).

¶26 Gulf and Security are correct to the extent that prior to this state's adoption of UFTA in 1991, the statute of limitations for fraudulent conveyances brought under the now repealed Uniform Fraudulent Conveyance Act (§§ 31-2-301 through 325, MCA) *was* supplied by the general rule for fraud under § 27-2-203, MCA, which provides that the two-year period prescribed for such an action accrues upon the discovery by the aggrieved party of the facts constituting the fraud or mistake. *See Murphy*, 262 Mont. at 168-69, 864 P.2d at 275-76. *See also Eskridge v. Nalls* (Okla.Ct.App. 1993), 852 P.2d 818, 820-21 (fraudulent transfer made prior to state's 1986 adoption of UFTA governed by statute of limitations under prior law). The underlying reasoning of our decision in *Murphy* was that until a money judgment was entered in favor of a creditor, the creditor did not have a legal right--i.e., standing--to bring a fraudulent conveyance claim against the debtor. *See Murphy*, 262 Mont. at 168, 864 P.2d at 275-76 (stating that requiring judgment creditor to "file suit within two years of the recording of the transfer would have required that suit be filed before they had a right to do so"). *See also Eskridge*, 852 P.2d at 820 (creditor had no standing to bring an action prior to judgment under pre-UFTA statute of limitations for fraud).

¶27 In light of the foregoing, Gulf and Security proclaim that they are "entitled to rely on the rule of law" in this case, and if this Court "is now inclined to reverse this rule of law, it

should do so prospectively, so that Gulf and Clark are not penalized for their reliance on the law as its exists." We agree with Gulf and Security that they are entitled to rely on the rule of law.

¶28 Therefore, we agree with Clark and the District Court that once our Legislature adopted the current UFTA in 1991, *Murphy*, in conjunction with § 27-2-203, MCA, was no longer the "rule of law" concerning the statute of limitations for bringing a fraudulent transfer claim. *See* UFTA § 9, 7A U.L.A. 359 (1999) (recommending that the new 1984 statute of limitations should be *four years* after the transfer is made and providing comment that its purpose "is to make clear that lapse of the statutory periods prescribed by the section bars the right and not merely the remedy") (emphasis added). If Gulf and Security had properly shepardized *Murphy*, or run a similar citation check in any number of legal databases, this manifest occurrence would have been revealed. Our preliminary research into this matter, for example, turned up an on-point 1996 Montana bankruptcy court decision which is noticeably absent from the parties' briefs. *See, e.g., Womack v. Eggebrecht* (Bankr. D.Mont. 1996) 191 B.R. 851, 857-58 (ruling that "neither the *Murphy* holding nor § 27-2-203, MCA, apply to actions under the recently enacted UFTA" and applying October 1991 enactment of UFTA to alleged fraudulent transfers made in December 1991).

¶29 Contrary to Gulf and Security's argument, therefore, a judgment in hand is not a legal prerequisite for establishing standing to bring an UFTA claim. The statute is quite explicit on this point. The logical progression flows as follows: first, under § 31-2-339(1), MCA, "a creditor" may obtain relief "against a transfer" under the act as prescribed under subparts (a) through (c); next, under § 31-2-328(4), MCA, the term "creditor" means a person who has a "claim"; and, finally, under § 31-2-328(3), MCA, the term "claim" means "a right to payment, *whether or not the right is reduced to judgment*, liquidated, unliquidated, fixed, contingent, matured, unmatured, legal, equitable, secured, or unsecured" (emphasis added).

¶30 Accordingly, UFTA clearly altered if not broadened the "accrual upon judgment" rule addressed by this Court in *Murphy,* and permits the diligent creditor to pursue its ancillary remedy long before a judgment is entered. Contrary to Gulf and Security's strained assertions, not attaining standing to contest a known transfer until a judgment is in hand-- which may take years--can hardly be construed as a boon to creditors. To the contrary, as § 31-2-340, MCA, makes clear, once the first transferee transfers the asset to a second transferee, the only remedy left to the creditor may be an equivalent-value money

judgment against the fraudulent parties for the assets transferred. Thus, UFTA affords the diligent creditor one more opportunity to freeze a debtor's assets *before* a judgment is entered, and then execute in satisfaction of the judgment at a later time. *See* § 31-2-339(2), MCA. *See also* § 1-3-218, MCA (stating maxim that the law helps the vigilant before those who sleep on their rights).

¶31 Aside from the clear mandate under UFTA, Gulf and Security nevertheless contend on public policy grounds that unless the statute of limitation period is tolled during the underlying case that establishes one party's right as a creditor, the UFTA "actually encourages fraudulent transfers of the type that are alleged to have occurred in this case." We fail to see the merit in this assertion for a number of reasons.

¶32 First, all that is required to toll the statute of limitations is the filing of a complaint. That, then, affords the creditor, pending the outcome of the underlying claim, a potential three-year leeway period under Rule 41(e), M.R.Civ.P. *See* § 27-2-102(1)(b), MCA (providing that for the purposes of statutes of limitations, an action is commenced when the complaint is filed).

¶33 Next, it is not clear why a special public policy exception should be carved from an otherwise explicit statute to accommodate a creditor who acquires knowledge of a transfer and then waits, without reasonable explanation, for more than one year to file his complaint.

¶34 This Court also looks with disfavor on a public policy argument that clearly misconstrues the underlying intent of a uniform act. Here, Gulf and Security suggest that the UFTA commissioners' Prefatory Note reveals that "[t]he law governing limitations on actions to avoid fraudulent transfers among the states is unclear and full of diversity" and uses this comment to buttress its contention that, due to an alleged split among jurisdictions that have adopted UFTA, we should look favorably upon a more creditor-friendly interpretation as provided under the *Cortez* decision. *See* UFTA, *Prefatory Note*, 7A U.L.A. 271 (1999). The commissioners' subsequent comments under the statute of limitations provision reveal, however, that the reference to "unclear and full of diversity" is a condition that the adoption of an explicit statute of limitations under the 1984 UFTA was intended to *correct*. The comments provide that "this section [§ 9, which is codified as § 31-2-341, MCA] should mitigate the uncertainty and diversity that have characterized the decisions applying statutes of limitations to actions to fraudulent transfers and obligations." *See* UFTA § 9 cmt.2, 7A U.L.A. 359 (1999).

¶35 Finally, however compelling Gulf and Security's public policy argument may seem, it must be placed in its proper, broader context of available remedies under Montana law. Montana law governing the creditor-debtor relationship hardly binds the hands of the diligent creditor in favor of the evasive debtor. To the contrary, in addition to UFTA, the law provides creditors with numerous viable ancillary remedies.

¶36 For example, a creditor may seek an injunction. *See* § 27-19-201(4), MCA (providing that when it appears that the adverse party, during the pendency of the action, threatens or is about to remove or to dispose of the adverse party's property with intent to defraud the applicant, an injunction order may be granted to restrain the removal or disposition).

¶37 Also, it is not uncommon for the diligent creditor in actions based in contract, pursuant to § 27-18-101, MCA, to seek a pre-judgment writ of attachment. Such a writ, which may be issued with the summons, secures a defendant's property, both real and personal, "for the satisfaction of any judgment that may be recovered." *See* § 27-18-201, MCA.

¶38 With a judgment in hand, as is the case here, a creditor has at a minimum six years to execute on the judgment. *See* §§ 25-13-101 and 102, MCA. Property subject to an execution includes "[s]hares and interest in any corporation or company, debts and credits, and all other property, both real and personal, or any interest in either real or personal property. . . ." *See* § 25-13-501, MCA. If such an execution is returned unsatisfied "in whole or in part," the judgment creditor is then "entitled to an order from a judge of the court requiring such judgment debtor to appear and answer concerning his property. . . ." *See* § 25-14-101, MCA.

¶39 Similarly, if, to the "satisfaction of a judge of the court that any judgment debtor has property which he unjustly refuses to apply toward the satisfaction of the judgment," the judgment debtor may be ordered to appear and "such proceedings may thereupon be had for the application of the property of the judgment debtor toward the satisfaction of the judgment . . . ." *See* § 25-14-102, MCA. Also, upon "proof, by affidavit or otherwise, to the satisfaction of the judge that any person or corporation has property of such judgment debtor or is indebted to him in an amount exceeding $50, the judge may, by an order, require such person or corporation or any officer or member thereof to appear at a specified time and place before him . . . an answer concerning the same." *See* § 25-14-103, MCA. Then, if it appears that the person or corporation alleged to have property of the judgment debtor or to be indebted to him claims an interest in the property adverse to him

or denies the debt, "the court or judge may authorize . . . the judgment creditor to institute an action against such person or corporation for the recovery of such interest or debt . . . and the court or judge may, by order, forbid a transfer or other disposition of such interest or debt until an action can be commenced and prosecuted to judgment." *See* § 25-14-104, MCA.

¶40 Finally, a judge may "order any property of a judgment debtor, not exempt from execution, in the hands of such debtor or any other person or due to the judgment debtor, to be applied toward the satisfaction of the judgment." *See* § 25-14-107, MCA.

¶41 Other potential remedies for the judgment creditor include the constructive trust and the equitable lien. *See* § 72-33-219, MCA (providing that a constructive trust arises when "a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if he were permitted to retain it"); *Rase v. Castle Mountain Ranch, Inc.* (1981), 193 Mont. 209, 222, 631 P.2d 680, 687 (affirming imposition of equitable lien and stating that a court of equity has all of the power requisite to render justice between the parties, particularly if the intent and disposition of one of the parties is not to perform his contractual obligations).

¶42 Thus, Montana's UFTA may be relied upon as a supplement to the foregoing or other similar remedies, as--perhaps--a more convenient and effective means to void questionable property transfers and stem the likelihood of further transfers by the debtor or a subsequent transferee. As § 31-2-342, MCA, makes clear, by no means is an action under UFTA an exclusive remedy. *See* § 31-2-342, MCA (providing that unless displaced by provisions under UFTA, "the principles of law and equity . . . supplement its provisions"). To this end we observe that although another remedy at equity or law may be available--one which may in fact accrue at the time judgment is entered--UFTA clearly stands on its own unambiguous terms.

¶43 We therefore conclude that, contrary to Gulf and Security's argument, the legal remedy available to the creditor in *Murphy*, brought under the now repealed Uniform Fraudulent Conveyance Act, is no longer available because that right was displaced by UFTA, which carries a clear, explicit statute of limitations. To this extent we join other jurisdictions which have criticized the ultimate determination of the California court in *Cortez. See*, *e.g.*, *Levy v. Markal Sales Corp.* (Ill.App.Ct. 2000), 724 N.E.2d 1008, 1012 (stating that "[a]lthough a creditor may elect to pursue his claim to judgment before instituting a fraudulent transfer action, he does so at the risk of losing his right to relief,"

and citing with approval *Intili v. DiGiorgio* (N.J.Sup.Ct.Ch.Div. 1997), 693 A.2d 573, 577, for the proposition that UFTA expressly limits a creditor's right to set aside a transfer to the time period in the statute, notwithstanding the date a party obtains a final judgment).

¶44 Finally, although resolving a of question law, we must nevertheless narrowly draw our holding to encompass only the underlying facts. To this end, we observe that although the District Court concluded that Gulf and Security could reasonably have discovered the five real estate transfers "at anytime following the date of recording," we do not confirm this as an absolute rule. The act of recording a transfer of real property in and of itself does not absolutely establish that a creditor has acquired actual or constructive knowledge of a transfer. Rather, we conclude that the "reasonable discovery" of the transfer is a discretionary ruling, one that must be adjudicated on a case-by-case basis.

¶45 Accordingly, the order of the District Court granting summary judgment in favor of Clark is affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ PATRICIA COTTER

/S/ JIM REGNIER