**Stephen WHITTINGTON, Appellant,**

**v.**

**Marc H. NATHAN, Appellee.**

**No. 01-10-00971-CV.**

Court of Appeals of Texas, Houston (1st Dist.).

April 12, 2012.

Rehearing Overruled June 19, 2012.

James Edward Zucker, Eric P. Chenweth, Yetter Coleman LLP, Houston, TX, for Appellant.

Andrew M. Williams, Andrew M. Williams & Associates, Bellaire, TX, Martin R. Nathan, Law Offices of Martin R. Nathan, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, SHARP, and BROWN.

## OPINION

TERRY JENNINGS, Justice.

Appellant, Stephen Whittington, challenges the trial court's rendition of summary judgment in favor of appellee, Marc H. Nathan, in Whittington's suit against Nathan for violations of the Uniform Fraudulent Transfer Act ("UFTA").[1] In his sole issue, Whittington contends that the trial court erred in granting Nathan summary judgment on the ground that Whittington had not timely filed his UFTA action under its four-year statute of repose.[2]

We reverse and remand.

### Background

In June 2006, Whittington obtained a $3.2 million judgment against his former business associate, Evan Baergen, in a Nevada court. Unable to collect on his judgment, Whittington, in May 2008, brought his UFTA action against Baergen and Nathan in a Nevada court, seeking to recover assets that Baergen had allegedly fraudulently transferred to Nathan. It is undisputed that Whittington asserted his UFTA claims in Nevada within UFTA's four-year statute of repose. However, the Nevada court ultimately dismissed Whittington's UFTA action for lack of personal jurisdiction. And Whittington, within sixty days of this dismissal, filed the instant suit against Nathan for violations of UFTA based upon the same allegations that he had made in the Nevada action.

Nathan sought summary judgment on the ground that a cause of action under UFTA is extinguished unless it is brought within the prescribed period—here, four years.[3] In his response, Whittington argued that he had timely brought the instant UFTA action because he had originally filed the action in Nevada before the expiration of the four-year statute of re-

---

**1.** See TEX. BUS. & COM. CODE ANN. §§ 24.01–.013 (Vernon 2009).

**2.** See id. § 24.010.

**3.** See id.

pose and he had, in accord with the applicable "savings statute" in the Texas Civil Practice and Remedies Code,[4] filed the UFTA action in Texas within 60 days of the Nevada court's dismissal.

## Standard of Review

To prevail on a summary-judgment motion, a movant has the burden of proving that he is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX.R. CIV. P. 166a(c); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex. 1995). When a defendant moves for summary judgment, he must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey,* 900 S.W.2d at 341. When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in his favor. *Id.* at 549.

We review the trial court's interpretation of a statute de novo. *See Johnson v. City of Fort Worth,* 774 S.W.2d 653, 655–56 (Tex.1989). In construing a statute, our objective is to determine and give effect to the Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000).

## Suspension of Statutes of Limitations and Repose

■ In his sole issue, Whittington argues that the trial court erred in granting Nathan summary judgment because he timely filed the instant UFTA action in Texas within 60 days of the Nevada court's dismissal, for lack of personal jurisdiction, of his same claims against Nathan. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.064 (Vernon 2008). Thus, he concludes that UFTA's four-year statute of repose did not extinguish his claims.

■ Section 16.064, entitled "Effect of Lack of Jurisdiction," provides that the period between the date of filing an action in one court and "the date of a second filing of the same action in a different court suspends the running of the applicable statute of limitations for the period" if:

(1) because of lack of jurisdiction in the trial court where the action was first filed, the action is dismissed or the judgment is set aside or annulled in a direct proceeding; and

(2) not later than the 60th day after the date the dismissal or other disposition becomes final, the action is commenced in a court of proper jurisdiction.

*Id.* § 16.064(a). The "remedial purpose" of section 16.064 is to provide relief "to one who has mistakenly brought his action in the wrong court." *Clary Corp. v. Smith,* 949 S.W.2d 452, 461 (Tex.App.-Fort Worth 1997, writ denied) (citation omitted).

Here, Whittington, timely, within UFTA's four-year statute of repose, sued Nathan in a Nevada court for violations of UFTA, but the Nevada district court dismissed the action for lack of personal jurisdiction. Whittington then, within 60 days of the dismissal, in compliance with section 16.064, made his second filing of the same UFTA action in the trial court below. Nevertheless, the trial court, apparently concluding that Whittington cannot rely upon section 16.064 to suspend the running of UFTA's statute of "repose" be-

4. *See* TEX CIV. PRAC. & REM.CODE ANN. § 16.064 (Vernon 2008).

cause it is not a statute of "limitation," granted Nathan summary judgment on the ground that Whittington had untimely filed his UFTA action in Texas.

Nathan's argument that section 16.064 does not apply in the instant case to suspend the running of UFTA's statute of repose is based, in large part, upon his interpretation of the Texas Supreme Court's opinion in *Galbraith Engineering Consultants v. Pochucha*, 290 S.W.3d 863 (Tex.2009). In *Galbraith*, the supreme court concluded that the Texas Legislature did not intend for former Texas Civil Practice and Remedies Code section 33.004(e),[5] which concerns the effect of the timely joinder of designated responsible third parties on statutes of limitations, "to revive a claim otherwise barred by a statute of repose, as distinguished from a statute of limitations." *Id.* at 864. Although the court recognized that the legislature has grouped statutes of repose and limitations together in chapter 16 of the Civil Practice and Remedies Code, it noted that "there are significant differences between the two." *Id.* at 866. After noting that "[s]tatutes of repose are created by the Legislature, and the Legislature may, of course, amend them or make exceptions to them," the court framed the issue before it as "whether the Legislature intended to make such an exception when it enacted section 33.004(e) as part of its proportionate responsibility scheme, that is, did the Legislature intend for the revival statute to operate as a general exception to periods of repose." *Id.* at 867.

The court's conclusion in *Galbraith*, limited to the effect of section 33.004(e) on statutes of repose, does not mean that section 16.064, which is expressly entitled, "Effect of Lack of Jurisdiction," does not apply to "statutes of repose." *See id.* at 867 & n. 4 (acknowledging that legislature has used term "limitations" in "both contexts" of limitations and repose; explaining that "statutes of repose in chapter 16 of the Civil Practice and Remedies Code refer to limitations rather than a period of repose"). Indeed, a closer reading of *Galbraith* and an understanding of the fundamental purpose of section 16.064 and how it is different from section 33.004(e), which the supreme court recognized as a "revival statute," compels the opposite conclusion. *Id.* at 869.

The supreme court in *Galbraith* noted that the legislature can "provide for the extension of a period of repose." *Id.* at 866. The court reasoned, however, that section 33.004(e), which allows a claimant sixty days to file a claim against a person after that person is "designated as a responsible third party," does more than "merely extend" the time to file the claim for a period of two months. *Id.* "It effectively renders the period of repose indefinite by attaching the claim's revival to the existence of some other claim and party that may not be subject to the same or similar period of repose." *Id.* The court noted that the original defendant, Bill Cox, and the subsequently designated responsible third party, Galbraith, worked on the same improvement to real property and were subject to similar ten-year statutes of repose. *Id.* "Hence, the court of appeals viewed section 33.004(e) as extending the period only by sixty days." *Id.* However, as further noted by the supreme court, "in other cases a responsible third party may be subject to a longer period of repose or none at all, creating an opportunity for revival many months or years beyond the ten-year period of repose prescribed by section 16.008." *Id.* at 867.

---

**5.** The legislature has now repealed section 33.004(e). Acts of May 30, 2011, 82nd Leg., R.S., ch. 203, §§ 5.02, 6.01–.02, 2011 Tex. Sess. Law Serv. ch. 203.

The supreme court concluded that the legislature could not have intended the term "limitations" as used in section 33.004(e) to apply more broadly to include statutes of "repose." *Id.* at 868–69. It reasoned that so broadly construing the term "limitations" as used in section 33.004(e) would defeat the recognized purpose for statutes of repose, that is, the establishment of a definite end to the potential for liability, unaffected by rules of discovery or accrual. *Id.* at 868. The court found nothing in section 33.004 or the proportionate responsibility scheme to convince it that the legislature intended to revive claims extinguished by a statute of repose, and, "[b]ecause application of the revival statute *in this instance* effectively renders the period of repose indefinite, a consequence clearly incompatible with the purpose for such statutes," it concluded that the legislature "intended for the term 'limitations' *in section 33.004(e)* to refer only to statutes of limitations." *Id.* at 869 (emphasis added).

Here, in stark contrast, construing the term "limitations" as used in section 16.064 to include statutes of repose would not in any way defeat the recognized purpose of statutes of repose. Indeed, the language of section 16.064 presumes that the pertinent action has been timely filed, albeit in a court lacking jurisdiction. Thus, section 16.064 does not serve to "revive" an action that was lost because it was not timely filed; rather, it merely serves to "suspend" the running of periods of limitations and repose for sixty days so that a plaintiff may make a "second filing of the same action in a different court" with "proper jurisdiction." TEX. CIV. PRAC. & REM.CODE ANN. § 16.064.

Accordingly, in interpreting the language of section 16.064, we conclude that the legislature intended for the term "statute of limitations" as used therein to in-

clude "statutes of repose," i.e., it intended to provide for a suspension of the period of limitations or repose for an action, which, although originally filed timely, was filed in a court lacking jurisdiction. *See id.* Accordingly, we hold that the trial court erred in granting Nathan summary judgment on Whittington's UFTA action.

We sustain Whittington's sole issue.

### Conclusion

We reverse the judgment of the trial court, and remand this case for further proceedings consistent with our opinion.

Justice BROWN, dissenting.

HARVEY BROWN, Justice, dissenting.

The trial court properly granted summary judgment pursuant to the Fraudulent Transfer Act's statute of repose. This Court's reversal of summary judgment is an equitable outcome under the facts of this single case, but as the rule of law, it undermines the Fraudulent Transfer Act's principle purpose of creating "uniformity" across the states and is contrary to the "absolute" nature of a statute of repose. To reach its holding, the Court had to read the phrase "the applicable statute of limitations" in section 16.064 of the Civil Practices and Remedies Code to mean "an applicable statute of limitations or repose"—language the Legislature could have adopted but did not. I therefore respectfully dissent.

### Whittington's Claim Was "Extinguished" by the Fraudulent Transfer Act's Statute of Repose

Section 24.010(a)(1) of the Fraudulent Transfer Act provides that certain Fraudulent Transfer Act claims are "extinguished" unless brought "within four years after the transfer was made or the obligation was incurred or, if later, within one

year after the transfer or obligation was or could reasonably have been discovered by the claimant[.]" Tex. Bus. & Com.Code Ann. § 24.010(a)(1) (West 2009). The parties agree that the statute of repose in section 24.010(a)(1) applies to Whittington's claims against Nathan and that it bars Whittington's claims unless the "savings clause" in section 16.064(a) of the Civil Practice and Remedies Code (CPRC) tolls the running of the statute of repose. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.064 (West 2008).

Section 16.064(a) "suspends the running of the applicable statute of limitations" for sixty days when a timely-filed suit is dismissed for lack of jurisdiction so that the plaintiff may re-file in a court of competent jurisdiction even if the second suit would otherwise be barred by limitations. *Id.* Whittington contends that his suit was filed timely because it was filed within sixty days after the Nevada court dismissed his earlier action for lack of jurisdiction. Nathan responds that section 16.064 expressly applies to "statute[s] of limitations" only and does not apply to section 24.010, which is a statute of repose. I agree for three reasons: (A) by its plain language, section 16.064 modifies only "the applicable statute of limitations"; (B) tolling is contrary to the nature and purpose of a statute of repose, and courts should not read a savings clause to toll a statute of repose absent a basis in the statute; and (C) tolling is contrary to the Fraudulent Transfer Act's statute of repose's goal of creating uniformity across the states with respect to when suit must be brought thereunder.

**A. Section 16.064 does not apply to the Fraudulent Transfer Act's statute of repose**

The issue in this case is one of statutory construction, requiring the Court to deter-mine the meaning and effect of section 16.064 of the CPRC and section 24.010 of the Fraudulent Transfer Act. In construing statutes, our primary objective is to give effect to the Legislature's intent. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex.2009); Tex. Gov't Code Ann. § 312.005 (West 2005). To determine the Legislature's intent, we first look to the plain language of the statute. *Fitzgerald v. Adv. Spine Fixation Sys.*, 996 S.W.2d 864, 865 (Tex.1999). If the words of a statute are clear and unambiguous, we apply them according to their plain and common meaning. *Galbraith*, 290 S.W.3d at 867. When the Legislature's intent cannot be ascertained from the statute's plain language, we resort to additional construction aids, such as the objective the Legislature sought to attain, the circumstances under which it enacted the statute, legislative history, former statutory provisions, and the consequences of a particular construction. *See id.* at 867–68; Tex. Gov't Code Ann. § 311.023(1)-(5) (West 2005).

**1. The parties agree that section 24.010 is a statute of repose**

Whittington and Nathan agree that section 24.010 of the Fraudulent Transfer Act is a statute of repose. *See Cadle Co. v. Wilson*, 136 S.W.3d 345, 350 (Tex.App.-Austin 2004, no pet.) (holding that section 24.010 is a statute of repose rather than merely a statute of limitations); *Duran v. Henderson*, 71 S.W.3d 833, 837–38 (Tex. App.-Texarkana 2002, pet. denied) (same). While a statute of repose and a statute of limitations both relate to the expiration of the time within which suit may be brought, they have important differences. *See Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P. v. Rankin*, 307 S.W.3d 283, 286–87 (Tex.2010) (holding that statute of repose for medical malpractice actions did not violate Open Courts provision

of Texas Constitution even though it extinguished claim that would not have been barred under statute of limitations due to discovery rule); *Galbraith*, 290 S.W.3d at 866–68 (holding that statute allowing joinder of certain claims otherwise barred by limitations did not apply to allow claims precluded by ten-year statute of repose for design professionals). In both *Rankin* and *Galbraith*, the Texas Supreme Court recognized that "while statutes of limitations operate procedurally to bar the enforcement of a right, a statute of repose takes away the right altogether, creating a substantive right to be free of liability after a specified time." *Rankin*, 307 S.W.3d at 286–87 (quoting *Galbraith*, 290 S.W.3d at 866).

Texas courts of appeals have treated section 24.010 as a statute of repose on this basis. In *Duran*, the Texarkana Court of Appeals similarly stated the substantive distinction between statutes of repose and statutes of limitations: one is a "procedural device" that "operates to bar enforcement of a right," while the other is a "substantive condition" that "takes away the right altogether." 71 S.W.3d at 837–38. The *Duran* court then looked to the purposes of the Fraudulent Transfer Act, and section 24.010 specifically, as reflected in the drafters' comments, to conclude that section 24.010 was intended to operate as a statute of repose rather than as a statute of limitations. *Id.* at 838 (citing Unif. Fraudulent Transfer Act § 9, 7A–2 U.L.A. 266, 359 cmt. 2 (1999) and *United States v. Bacon*, 82 F.3d 822, 823–24 (9th Cir.1996)). Similarly, in *Cadle Co. v. Wilson*, the Austin Court of Appeals observed: "[S]ection 24.010 is not simply a limitations provision, but is specifically titled 'Extinguishment of Cause of Action.' Such language indicates that the limitations provision of UFTA is intended to be strictly construed and that section 24.010 is technically a statute of repose, rather than a

statute of limitations." 136 S.W.3d at 350 (citing *Duran*, 71 S.W.3d at 837). The Texas Supreme Court cited *Cadle* favorably in *Galbraith*. *Galbraith*, 290 S.W.3d at 868.

**2. Section 16.064 expressly applies to "statute[s] of limitations"**

Section 16.064 of the CPRC "suspends the running of the applicable statute of limitations" between when Whittington filed his fraudulent transfer action in Nevada and when he filed the same action in Texas. Tex. Civ. Prac. & Rem.Code Ann. § 16.064. Whittington argues that the phrase "the applicable statute of limitations" in section 16.064 is ambiguous and should be read to include both statutes of limitations and statutes of repose. Relying on *Galbraith*, he urges this Court to "resort to additional construction aids, such as the objective of the law, the legislative history, the common law or former statutory provisions ... and the consequences of a particular construction" to conclude that the phrase is intended to include statutes of repose. But the *Galbraith* Court reached the opposite result, holding that another "savings" statute did not revive a claim after expiration of the statute of repose. 290 S.W.3d at 867–68.

Moreover, the *Galbraith* Court considered statutory construction aids only after determining that the savings clause at issue was ambiguous. *Id.* at 867 (stating that it was "unclear ... whether the Legislature intended the term 'limitations' in section 33.004(e) to apply narrowly to statutes of limitations or more broadly to include statutes of repose because the term has been used in both contexts"); *see also* Acts of May 30, 2011, 82nd Leg., R.S., ch. 203, § 5.02, 2011 Tex. Sess. Law Serv. ch. 203 (repealing former Tex. Civ. Prac. & Rem.Code Ann. § 33.004(e), which allowed claimants to join responsible third parties

within sixty days of designation, "even though such joinder would otherwise be barred by limitations").

Citing instances in the CPRC where the Legislature used the term "limitations" in a manner that encompassed both statutes of limitations and statutes of repose, the *Galbraith* Court concluded that the single word "limitations," as used in the CPRC, was ambiguous with respect to whether it referred to statutes of limitations only or whether it also referred to statutes of repose. *Galbraith,* 290 S.W.3d at 866 & n. 4 (citing TEX. CIV. PRAC. & REM.CODE ANN. §§ 16.008(c), 16.009(c), 16.011(b), 16.012(d-1)).

Section 16.064, however, does not refer to "limitations" generally, but rather, refers to "statutes of limitations" specifically. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.064. The use of this specific term of art leaves little room for "interpretation" of the Legislature's acutely expressed intent, and Whittington has not identified any instances in which the Legislature used the term "statute of limitations" to encompass both statutes of limitations and statutes of repose. *Cf. id.* § 150.002(g) (relating to actions against design professionals and stating, "This statute shall not be construed to extend any applicable period of limitation or repose."); *see also id.* § 147.043 (regarding disability and explaining its application to "periods of limitation and repose"); *id.* § 147.044(b) (mentioning the "period of limitation or repose" under this section); TEX. INS.CODE ANN. § 462.309(c) (West 2009) (stating: "Statutes of limitation or repose are not tolled during the stay, and any action filed during the stay is stayed upon the filing of the action.").

Thus, section 16.064 unambiguously applies only to "the applicable statute of limitations" and does not alter the Fraudulent Transfer Act's statute of repose.

### B. Tolling undermines the "absolute" nature of a statute of repose

"The purpose of a statute of repose is to provide. 'absolute protection to certain parties from the burden of indefinite potential liability.'" *Galbraith,* 290 S.W.3d at 866 (quoting *Holubec v. Brandenberger,* 111 S.W.3d 32, 37 (Tex.2003)). Statutes of repose "begin to run on a readily ascertainable date" and, unlike statutes of limitations, are "not subject to judicially crafted rules of tolling or deferral." *Rankin,* 307 S.W.3d at 286. "Indeed, the key purpose of a repose statute is to eliminate uncertainties under the related statute of limitations and to create a final deadline for filing suit that is not subject to any exceptions, *except* perhaps those clear exceptions in the statute itself." *Id.* (emphasis added); *see also Holubec,* 111 S.W.3d at 37 (stating that statutes of repose "fix an outer limit beyond which no action can be maintained."); *Aguilar v. Trujillo,* 162 S.W.3d 839, 853 (Tex.App.-El Paso 2005, pet. denied) ("A claim extinguished by operation of a statute of repose does not 'relate back' to the filing of an earlier pleading as it would in the case of a statute of limitation."). The exception requested by Whittington—tolling under section 16.064—is not within section 24.010 itself. As in *Galbraith,* the key purpose of a definitive deadline is frustrated if courts interpret external statutory savings provisions as reviving the cause of action extinguished by the statute. *See Galbraith,* 290 S.W.3d at 869.

### 1. *Galbraith* declined to apply an ambiguous revival statute to a statute of repose

Even if section 16.064 were ambiguous as to whether it applied to statutes of repose, the *Galbraith* Court's analysis counsels against a broad interpretation of such savings provisions to include statutes

of repose. *Galbraith,* 290 S.W.3d at 867–69. The *Galbraith* Court determined that construing the savings clause at issue in that case to apply to statutes of repose "would defeat the recognized purpose for statutes of repose, that is, the establishment of a definite end to the potential liability, unaffected by rules of discovery or accrual." *Galbraith,* 290 S.W.3d at 868. Observing that statutes of repose create a "substantive right to be free from liability after a legislatively determined period," the Court concluded that statutes of repose "thus represent[ ] the Legislature's considered judgment as to the inadequacy of the traditional statutes of limitations for some types of claims." *Id.* The Court held: "Because application of the revival statute in this instance effectively renders the period of repose indefinite, a consequence clearly incompatible with the purpose for such statutes, we conclude that the Legislature intended for the term 'limitations' in section 33.004(e) to refer only to statutes of limitations." *Id.* at 869.

**2. Although the Court distinguishes *Galbraith,* the distinction does not provide a basis for reaching a different result**

In *Galbraith,* the court of appeals treated former section 33.004(e)'s savings clause as merely extending the statute of repose period by sixty days. *Id.* at 866. The Supreme Court rejected this view, noting that the savings clause could actually extend the life of a claim indefinitely because the sixty-day savings period was linked to the date on which a party was designated as a responsible third party in a lawsuit, an event that could happen "months or years" after the claim was extinguished by the statute of repose. *Id.* at 866–67. This Court distinguishes *Galbraith* on this basis, contending that the savings clause in section 16.064 creates no such indefiniteness because it merely extends the time for filing a suit for sixty days after dismissal of the earlier action.

I agree that the sixty-day revival period in section 16.064 is, as this Court suggests, distinguishable from the sixty-day revival period in former section 33.004(e), but I disagree that this distinction alleviates the potential problems identified by the Supreme Court in *Galbraith.* Like former section 33.004(e), the sixty-day savings period in section 16.064 does not commence on the date the statute of repose expires and thus does not merely extend the statute of repose by sixty days. Instead, it commences on the date that the claimant's prior action in another jurisdiction is dismissed, creating a sixty-day grace period for filing suit that begins at some indefinite time after the statute of repose expired. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.064. Like the designation of a responsible third party in another lawsuit, the final dismissal of another lawsuit may come "months or years" after the statute of repose deadline. *Cf. Galbraith,* 290 S.W.3d at 867.

This case demonstrates as much. Whittington alleges a fraudulent transfer in May 2004, but he did not file this action until January 2009—eight months after the statute of repose "extinguish[ed]" his claims. But this case does not demonstrate the full extent of potential post-repose revival under the Court's interpretation of section 16.064. The Nevada court disposed of Whittington's claims against Nathan relatively quickly—six months after he initiated the suit. And Whittington filed this action within sixty days of the Nevada trial court's dismissal, rather than after pursuing his appellate options in Nevada to finality. Not all cases will be as prompt. Challenges to personal jurisdiction frequently require substantial discovery and briefing. It is reasonable to expect that it may be a year

or more before a· trial court is able to dispose of claims on the ground that it does not have personal jurisdiction over a party. Similarly, it reasonably may take several more years for a claimant to pursue all of his appellate options in another jurisdiction, further delaying the date on which the dismissal "becomes final," commencing accrual of section 16.064's sixty-day savings period. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.064. Thus, while the Court's holding here gives life to Whittington's fraudulent transfer claim eight months after the statute of repose extinguished that claim, the holding may, in the next case, give life to a fraudulent transfer claim four years (or longer) after the statute of repose extinguished the claim—doubling the legislatively-mandated period for filing such a claim.

For these reasons, like in *Galbraith,* "application of the revival statute in this instance effectively renders the period of repose indefinite, a consequence clearly incompatible with the purpose for such statutes[.]" *Galbraith,* 290 S.W.3d at 869. Thus, even if section 16.064 were ambiguous as to whether it applies to statutes of repose, which it is not, I would follow the Supreme Court's lead in *Galbraith* and conclude that the Legislature intended for the phrase "statute of limitations" in section 16.064 to refer only to statutes of limitations. *See id.*

## C. Tolling undermines the express purpose of the Fraudulent Transfer Act's statute of repose

The legislative histories of the Fraudulent Transfer Act and the Uniform Fraudulent Transfer Act from which it was adopted weigh against revival. *Cf. Galbraith,* 290 S.W.3d at 868 (looking to Leg-

islature's purpose in enacting statute of repose for design professionals in determining whether it was tolled by CPRC's former provision for post-limitations joinder). When it adopted the Fraudulent Transfer Act, the Legislature made express its overarching intent for the Act: "This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it." TEX. BUS. & COM.CODE ANN. § 24.012; *see also* TEX. GOV'T CODE ANN. § 311.028 (West 2011) ("A uniform act included in a code shall be construed to effect its general purpose to make uniform the law of those states that enact it."). The very title of the statute—the Uniform Fraudulent Transfer Act—underscores the need for uniformity in its interpretation. *Id.* § 24.001.

The comments to the Uniform Fraudulent Transfer Act demonstrate that its drafters shared this goal and designed section 24.010 to resolve inconsistencies between the states with regard to when a fraudulent transfer claim could be brought. *See* UNIF. FRAUDULENT TRANSFER ACT § 9, 7A-2 U.L.A. 266, 359 cmt. 2 ("this section should mitigate the uncertainty and diversity that have characterized the decisions applying statutes of limitations to actions to fraudulent transfers and obligations"); *see also Duran,* 71 S.W.3d at 838. To effectuate this purpose, section 24.010 provides for the "extinguishment" of a right of action for fraudulent transfer, not merely a bar to the remedy. TEX. BUS. & COM.CODE ANN. § 24.012; *see also* UNIF. FRAUDULENT TRANSFER ACT § 9, 7A-2 U.L.A. 266, 359 cmt. 2; *Duran,* 71 S.W.3d at 838. Contrary to Whittington's contentions,[1] the

---

1. Whittington argues that application of section 16.064's savings clause "accords with the purpose of the statutes of repose" because

section 16.064 "cannot extend the period of potential liability because it is only effectual if the first action is filed within the time pre-

statute's goal—uniformity through an ascertainable end to potential liability not subject to each state's various rules for tolling and deferral—is frustrated if section 24.010 is subject to statutory tolling under section 16.064 of the CPRC. *Cf. Sw. Bank v. Info. Support Concepts, Inc.*, 149 S.W.3d 104, 108–09 (Tex.2004) (declining to apply CPRC's proportionate responsibility scheme to conversion claims under Uniform Commercial Code when doing so would subject Texas litigants to liability that differed from other states, contrary to purpose of uniform act).

The parties have not cited, and I have not found, authority from another state that has applied or declined to apply a savings clause for cases originally filed in the wrong jurisdiction to toll an equivalent Uniform Fraudulent Transfer Act statute of repose. A number of states that have adopted similar statutes of repose under their enactment of the Uniform Fraudulent Transfer Act have declined to apply other tolling rules to their repose statute on the ground that doing so would disturb the state-to-state uniformity the Uniform Fraudulent Transfer Act was designed to achieve. *See, e.g., Rafuse v. Stryker*, No. 090107, 2010 WL 2431921, at *5 (Mass.Super.Ct. Apr. 21, 2010) (holding that equivalent provision in Massachusetts's Uniform Fraudulent Transfer Act was statute of repose and therefore was not subject to discovery rule except as expressly provided for within statute); *K–B Bldg. Co. v. Sheesley Constr., Inc.*, 833 A.2d 1132, 1137 (Pa.Super.Ct.2003) (rejecting argument that period for bringing action under Pennsylvania's Uniform Fraudulent Transfer Act was tolled for judgment creditor until judgment was entered in creditor's favor, reasoning that rule would be inconsistent with statutory purpose of conformity across states); [2] *Intili v. DiGiorgio*, 300 N.J.Super. 652, 693 A.2d 573, 576–78 (1997) (observing that purpose of New Jersey's Uniform Fraudulent Transfer Act was to align state law on fraudulent transfers and holding that statute of repose period was not subject to equitable tolling). Whittington cites to cases in which a few states have applied other savings provisions to statutes of repose under other state statutes—generally, medical malpractice statutes—but those cases are distinguishable because, among other reasons, the statutes at issue were not part of uniform acts designed to create conformity across the states. *See DeLuna v. Burciaga*, 223 Ill.2d 49, 306 Ill.Dec. 136, 857 N.E.2d 229, 238 (2006) (addressing interaction between savings provision and statute

---

scribed by the statute of repose and subsequently dismissed based on jurisdiction." I disagree. The application of 16.064 to this case would allow Whittington to bring claims against Nathan after the date on which section 24.010 vested in Nathan "a substantive right to be free from liability." *Galbraith*, 290 S.W.3d at 868. There is a conflict between Whittington's purported right under section 16.064 to commence a cause of action after the expiration of the repose period and Nathan's right to be free from liability under section 24.010. While the Nevada action provided Nathan with notice of the potential for a subsequent action in another forum, the potential for future liability is exactly what section 24.010 attempts to limit and conform from state to state. *Cf. Aguilar v. Trujillo*, 162 S.W.3d 839 (Tex.App.-El Paso 2005, pet. de-

nied) (holding that nuisance claim arising out of same subject matter as pending action could not be brought after expiration of statute of repose even though it would have been permitted after expiration of statute of limitations under "relation back" doctrine).

**2.** *Accord Moore v. Browning*, 203 Ariz. 102, 50 P.3d 852, 860 (2002) (rejecting same common law tolling rule under Arizona's Uniform Fraudulent Transfer Act); *SASCO 1997 NI, L.L.C. v. Zudkewich*, 166 N.J. 579, 767 A.2d 469 (2001); *Gulf Ins. Co. v. Clark*, 304 Mont. 264, 20 P.3d 780 (2001); *First Sw. Fin. Servs. v. Pulliam*, 121 N.M. 436, 912 P.2d 828 (1996); *but see Cortez v. Vogt*, 52 Cal.App.4th 917, 60 Cal.Rptr.2d 841 (1997).

of repose found in Illinois's medical malpractice statute);[3] *See v. Hartley,* 257 Kan. 813, 896 P.2d 1049, 1055 (1995) (addressing interaction between savings provision and statute of repose found in Kansas's medical malpractice statute); *Cronin v. Howe,* 906 S.W.2d 910, 914 (Tenn.1995) (applying savings provision to Tennessee's medical malpractice statute of repose);[4] *cf. Levy v. Markal Sales Corp.,* 311 Ill. App.3d 552, 244 Ill.Dec. 120, 724 N.E.2d 1008 (2000) (declining to apply rule tolling deadline for filing suit for judgment creditors to statute of repose in Illinois's Uniform Fraudulent Transfer Act), *appeal denied,* 189 Ill.2d 660, 246 Ill.Dec. 915, 731 N.E.2d 764 (2000).

Application of section 16.064's savings provision to the Fraudulent Transfer Act disrupts uniformity in several respects. First, although some other states have similar savings provisions, I have found no case in which another state applies such a provision to the statute of repose in their uniform fraudulent transfer act. Second, section 16.064 is not mirrored in the statutes of all states,[5] and even among those states that have adopted a similar savings provision, there are differences in the scope of cases reached by the provision[6] and in the length of time for which the provision will toll an applicable statute of limitations.[7] The tolling period includes not only the indefinite period during which

**3.** *See also Limer v. Lyman,* 241 Ill.App.3d 125, 181 Ill.Dec. 667, 608 N.E.2d 918 (1993) (addressing interaction between medical malpractice statute of repose and savings provision); *Hinkle v. Henderson,* 85 F.3d 298 (7th Cir.1996) (same, applying Illinois law).

**4.** *See also Sharp v. Richardson,* 937 S.W.2d 846, 850 (Tenn.1996) (applying Tennessee's statutory savings provision to its statutes of repose for medical malpractice and products liability actions).

**5.** *See, e.g., Peterson v. Hohm,* 607 N.W.2d 8, 13 (S.D.2000) (observing that South Dakota has not adopted savings statute for situations when plaintiff filed prior suit in another jurisdiction that was dismissed for lack for jurisdiction and declining to judicially create such rule or to apply equitable tolling); *Braaten v. Deere & Co.,* 569 N.W.2d 563, 565 (N.D.1997) (declining to reach issue of whether equitable tolling might be allowed when second suit was filed after timely-filed suit was dismissed for lack of jurisdiction); *Galligan v. Westfield Ctr. Serv., Inc.,* 82 N.J. 188, 412 A.2d 122, 127 (1980) (Pollock, J., dissenting) (noting that New Jersey has not adopted savings statute and dissenting from judicial-creation of savings doctrine).

**6.** For example, Kentucky has a similar savings provision but it addresses only actions commenced in "any court of this state." KY. REV. STAT. ANN. § 413.270. Colorado has a savings provision that extends to both dis-

missal for lack of jurisdiction and for improper venue. COLO.REV.STAT. ANN. § 13–80–111. Georgia's savings statute extends to cases that are dismissed or discontinued by the plaintiff. GA.CODE ANN. § 9–2–61. Indiana allows the re-filing of any action to be treated as a "continuation" of the previously filed action if the prior action "failed" and the failure was not due to the negligence of the plaintiff. IND. CODE ANN. § 34–11–8–1. Arizona's savings provision applies regardless of the manner in which the prior action is terminated, though the tolling period is judicially determined when the termination is the result of abatement, nonsuit, or want of prosecution. Missouri's savings statute does not apply to statutory causes of action that contain their own statute of limitations. *Hutcheson v. Elec. Data Access Tech., Inc.,* 327 S.W.3d 622, 625 (Mo.Ct.App.2010).

**7.** For example, section 16.064 tolls limitations for sixty days after dismissal of the prior suit, while Kentucky's and Colorado's savings statutes toll limitations for ninety days after dismissal of the prior suit. KY.REV.STAT. ANN. § 413.270; COLO.REV.STAT. ANN. § 13–80–111. The Georgia and Arizona savings statutes allow re-filing with six months; Ohio's and Connecticut's savings statutes allows re-filing within one year; and Indiana's statute allows re-filing within three years. GA.CODE ANN. § 9–2–61; ARIZ.REV.STAT. § 12–504(A); OHIO REV.CODE ANN. § 2305.19; CONN. GEN.STAT. ANN. § 52–592; IND.CODE ANN. § 34–11–8–1.

the prior action is pending in another jurisdiction but also a state-specific post-dismissal period, which can range from thirty days to three years.[8] Thus, even if all states with similar savings provisions were to apply such provisions to the statute of repose in their uniform fraudulent transfer act, there would be no uniformity across the states or even among the states with savings provisions.

Moreover, in light of section 24.010's express inclusion of a tolling period based on the discovery of the underlying fraudulent transition in subsection (a)(1) and a tolling period for disability under subsection (c),[9] the statute's omission of any other tolling period is some indication that the Legislature did not intend other tolling provisions to apply. *See* TEX. BUS. & COM. CODE ANN. § 24.010(a)(1) (extinguishing cause of action four years after transfer or, if later, one year after transfer was or reasonably could have been discovered), (c) (deferring time period for bringing suit with respect to minors and persons of unsound mind); *see also Energy Serv. Co. of Bowie, Inc. v. Superior Snubbing Servs., Inc.*, 236 S.W.3d 190, 198 (Tex.2007) (stating principal that, just as every word of statute must be presumed to have been used purposefully, every word excluded from statute must be presumed to have been excluded purposefully).

Whittington implies that this construction is rigid and draconian because he filed the Nevada lawsuit in good faith, the savings clause only extends the time for filing "a mere 60 days," and Nathan "had actual notice" of his potential liability before the statute of repose expired due to the Nevada suit. These are the kinds of equitable considerations that justify section 16.064's tolling of statutes of limitations. But a key distinction between a statute of limitations and a statute of repose is that the former is subject to equitable tolling while the latter is not. *See Galbraith*, 290 S.W.3d at 866, 868. A repose statute, by its very nature, may create a hardship on a claimant whose cause of action is extinguished upon a date certain even though the claimant is not at fault for his failure to bring the cause of action before that date. For example, a statute of repose may extinguish a cause of action before the claimant knew of should have known of his claims. *Id.* at 866. This potential for hardship may be justified by the benefits of a statute of repose: certainty—including a date certain on which individuals and businesses may close the books on a transaction or event—and predictability—including definitive periods of liability that may be used in purchasing insurance and making other forward-looking arrangements—and, in the case of a uniform act, uniformity across the states. *See id.* at 866, 868 (stating that statute of repose eliminates "burden of indefinite potential liability created by discovery rule"). This is the kind of balancing of interests that the Legislature must make in adopting a statute of repose, rather than merely a statute of limitations.

---

8. *Compare* TEX. CIV. PRAC. & REM.CODE ANN. § 16.064 (thirty days), *with* IND.CODE ANN. § 34-11-8-1 (three years).

9. A previous version of section 24.010 did not expressly provide for tolling based on disability but, instead, incorporated section 16.001 of the CPRC, which provides for tolling on the basis of disability under the same terms. *See* Acts 1987, 70th Leg., ch. 1004, § 1, 1987 Tex. Gen. Laws 3393 (West); TEX. CIV. PRAC. & REM.CODE ANN. § 16.001. By eliminating the reference to an external tolling provision and incorporating the same tolling period within the text of the statute itself, the Legislature brought section 24.010 more in line with the *Rankin* court's observation that statutes of repose are "not subject to any exceptions, except perhaps those clear exceptions in the statute itself." *Rankin*, 307 S.W.3d at 286.

Finally, Whittington argues that the failure to apply section 16.064 to fraudulent transfer claims "would have perverse consequences" because litigants would "have to file the same action in multiple jurisdictions to preserve their claim in the event that one of the courts lacks jurisdiction." Whittington's point goes to the inefficiency that section 16.064 is designed to prevent. *See In re United Servs. Auto. Ass'n,* 307 S.W.3d 299, 304 (Tex.2010). But balancing the interests in equity and judicial economy advanced by section 16.064 of the CPRC against the interests in certainty and uniformity advanced by section 24.010 of the Fraudulent Transfer Act falls squarely within the Legislature's prerogative. A court must give full force and effect to the Legislature's decision to enact a statute of repose rather than merely a statute of limitations for governing the time period in which a fraudulent transfer action must be brought under Texas law. Because the Legislature has expressly instructed us to construe section 24.010 of the Fraudulent Transfer Act "to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it," and different statutes may have different savings provisions, we should reject the attempt to engraft section 16.064's savings clause into the Act to destroy that uniformity. TEX. BUS. & COM.CODE ANN. § 24.012. Whittington has identified no contrary directive for interpretation and application of section 16.064 of the CPRC.

### Conclusion

Section 16.064 unambiguously applies to "the applicable statute of limitations," not statutes of repose, and a court may not resort to statutory construction aids to alter the statute's clear language. Moreover, in light of the "finality" purpose of statutes of repose generally and the "uniformity" purpose of the Fraudulent Trans-

fer Act's statute of repose specifically, I reject Whittington's argument that the statutory construction aids, if available, would favor interpreting the phrase "statute of limitations" in section 16.064 as meaning "statutes of limitations and repose." I therefore would hold, as the trial court did, that section 24.010 of the Fraudulent Transfer Act extinguished Whittington's claim thereunder on the date that the statute of repose expired and section 16.064 did not operate to revive that claim for a sixty-day period after the Nevada court's dismissal of Whittington's earlier suit.

For these reasons, I respectfully dissent.